Frank DeVITO et al., Plaintiffs,

v.

George P. SHULTZ, Individually and as Secretary of Labor, Defendants.

Civ. A. No. 78–69.

United States District Court
District of Columbia.

May 29, 1969.

Mozart G. Ratner, Sidney Dickstein, George Kaufmann, Washington, D. C., for plaintiffs.

Harland F. Leathers, David Orlikoff, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

### I.

Plaintiffs have filed an action in mandamus seeking an order of the Court directing the Secretary of Labor to initiate a proceeding in the Federal District Court under Title IV of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 481–483, to set aside the results of a recent contested election of the Retail Clerks International Union by reason of certain alleged irregularities in that election. The Secretary responds by motion to dismiss and in the alternative for summary judgment alleging in substance that the Court is wholly without jurisdiction in the matter and that, alternatively, he properly exercised his discretion in refusing to file suit.

Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), rehearing denied, 379 U.S. 984, 85 S.Ct. 639, 13 L.Ed.2d 577 (1965), holds that Title IV of the Labor-Management Reporting and Disclosure Act creates an exclusive remedy to pursue alleged union election irregularities through the Secretary of Labor, at least in all post-election disputes such as the present controversy. While this remedy is exclusive it does not follow that the Federal Courts are necessarily without power or jurisdiction to protect aggrieved parties such as plaintiffs here if it should clearly appear that the Secretary has acted in an arbitrary and capricious manner by ignoring the mandatory duty he owes plaintiffs under the powers granted by the Congress.[1] Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Indeed, the very exclusivity of the remedy serves to emphasize the necessity of some degree of Court supervision To rule otherwise would enable the Secretary to frustrate the will of Congress; it would leave the Secretary's conduct immune from scrutiny in matters where he is charged with significant responsibilities that must be carried out if the sweeping congressional directive to infuse basic principles of democratic free election into union organizations is to be implemented.

There is before the Court a letter (appearing in full text as Appendix I to this Memorandum Opinion) purporting to explain the Secretary's decision not to initiate proceedings to set aside the election. It is signed by the Director of the Office of Labor-Management and Welfare-Pension Reports of the U. S. Department of Labor. Plaintiffs urge that this letter on its face alone admits significant irregularities in the challenged election and that in view of the nature of these irregularities it is apparent there is probable cause to believe the violations found affected the outcome of the election, thus requiring the Secretary to bring suit. The Secretary responds that what is involved is a matter of judg-

---

[1]. 29 U.S.C. § 482(b) states in part:

(b) The Secretary *shall* investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he *shall*, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States * * *. (Emphasis Added).

ment and discretion and that since he has, in spite of the irregularities found, determined there is no probable cause to believe the violations affected the election outcome it is the end of the matter and the Court cannot intrude into the exercise of his discretion.

█ This proceeding has disclosed weaknesses in the Secretary's procedures for processing cases of this kind. The Secretary has delegated his responsibility to his Solicitor and an Assistant Secretary. To the extent that these individuals agree not to bring suit to set aside the election, the Secretary feels he is not required to consider the matter at all. This delegation appears to be lawful under the authorities, Fleming v. Mohawk Wrecking & Lumber Co, 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947); Wirtz v. Atlantic States Construction Co., 357 F.2d 442 (5th Cir. 1966), albeit somewhat questionable. It is doubtful that Congress intended subordinates should have such great authority in this sensitive area for, unlike the situation under many other statutes, Congress did not give any affirmative indication that it contemplated such delegation.

Even accepting the Secretary's authority to delegate, however, when action is taken by the Secretary's representatives it must be such as to enable a reviewing Court to determine with some measure of confidence whether or not the discretion, which still remains in the Secretary, has been exercised in a manner that is neither arbitrary nor capricious. This Court is unwilling to permit the Secretary to avoid all inquiry into his performance of a statutory responsibility by resort to a legal presumption that he exercised his discretion properly. If the Secretary delegates his responsibilities, as he has done here, this in no way saves the situation for it does not follow from the fact of delegation that the subordinates functioned within the proper range that discretion allows. Indeed, the more subordinates are delegated serious cabinet responsibility the more it would appear it is necessary for them to delineate and make explicit the basis upon which discretionary action is taken, particularly in a case such as this where the decision taken consists of a failure to act after the finding of union election irregularities.

The letter sent to petitioners, who are plaintiffs here, contains nothing from which the Court may, upon the face of the letter, determine how the subordinates involved reached the conclusion they did, given the pervasive and serious election irregularities they found to exist. Indeed, Government counsel indicated there may in fact be no formal record of the reasons leading to the decision reached between the Assistant Secretary and the Solicitor.

█ The Government, recognizing the weakness of its position, suggests that an aggrieved person's protection against arbitrary administrative action lies not in the courts but through the ballot box. This is a desperate argument. It is no answer to say that a non-elected official such as the Secretary, who through subordinates acts arbitrarily, may be removed at some indefinite later date through a national presidential election. The Government's contention, moreover, ignores the traditional role of the courts. The courts have a duty to maintain minimum standards in the Executive Department to assure that the wishes of Congress are not frustrated. This duty has been clear since Marbury v. Madison, 1 Cranch (5 U.S.) 137, 2 L.Ed. 60 (1803). Surely Congress must have intended that courts would intercede sufficiently to determine that the provisions of Title IV have been carried out in harmony with the implementation of other provisions of the Labor-Management Reporting and Disclosure Act, for which the Federal Courts are given primary responsibility. Therefore, plaintiffs have a judicially enforceable right to demand that the Secretary exercise his discretionary authority in a manner consistent with the requirements of the Act and not arbitrarily or capriciously.

Schonfeld v. Wirtz, 258 F.Supp. 705 (S.D. N.Y.1966).[2]

■ The Court does not propose to substitute its discretion for that of the Secretary or his subordinates. In view of the findings contained in Appendix I, the Court is, however, of the opinion that the Secretary must provide those who petitioned for his intervention with an adequate written statement of his reasons for non-intervention. The letter provided the petitioners in this instance leaves this essential consideration open to serious doubt. No reader of the letter from the Secretary's delegate could conclude from its face that the Secretary was, on the facts stated, obliged automatically to conclude that the serious irregularities found to exist did not affect the outcome of the election. Indeed, the contrary would seem equally apparent. Accordingly, the Court will order the Secretary to reopen this matter and to direct re-examination of the ruling in the light of the requirements of the statute and the standards laid down by the pertinent cases. If on such further reconsideration the Secretary is determined not to act, a fuller statement of reasons and explanation in support thereof is required. Such a statement shall be furnished the Court within 30 days of the date of this Memorandum Opinion. In the meantime, the Government's motion to dismiss and in the alternative for summary judgment is denied without prejudice.

## II.

■ Plaintiffs by amendment to their complaint make similar allegations of arbitrary and capricious action arising from the Secretary's resolution of a dispute over the "election" of James A. Suffridge as International President Emeritus of the RCIA. The Secretary again responds by motion to dismiss and in the alternative for summary judgment.

Suffridge automatically became International President Emeritus on July 29, 1968, when he stepped down as International President. A 1963 constitutional amendment to the RCIA Constitution had created the emeritus position solely for Suffridge upon his retirement. One of the plaintiffs herein, following the procedures established by Title IV of the Labor-Management Reporting & Disclosure Act, complained that Suffridge's assumption of the emeritus status constituted an illegal election of an officer under Title IV, there having been no actual election process. The Secretary, through his representatives, apparently essentially agreed with this line of reasoning but allowed RCIA time to remedy the violation before instituting suit. The International Executive Board under its powers then amended the Constitution so as to remove from the stated duties of President Emeritus those sections which gave Suffridge executive powers and which the Secretary believed made him an officer. The Secretary, satisfied that the violation had been remedied within the meaning of 29 U.S.C. § 482 (b), then dismissed the complaint.

Plaintiffs claim that Suffridge is still an officer and the violation therefore has not been remedied. The Court, after reviewing the RCIA Constitution, the various amendments thereto, the reasoning of the Secretary's delegate (appended to this Memorandum Opinion as Appendix II), and the written and oral arguments in this case, finds that the Secretary has not abused his discretion. The person occupying the position of International President Emeritus, which has been stripped of any executive functions relating to the internal management of the RCIA in the United States, is not, under the Secretary's long-established interpretation of the Act, any

2. The formal orders, cited by the Government, of other Judges of this Court refusing to intervene do not in any way indicate that the Court did not make sufficient inquiry to be satisfied that the Secretary was properly complying with his responsibilities. Katrinic v. Wirtz, 62 L.R.R.M. 2557, 53 L.C. ¶ 11,289 (D. D.C.1966) ; Altman v. Wirtz, 56 L.R.R.M. 2651, 50 L.C. ¶ 19,211 (D.D.C.1964).

longer considered an officer of a labor organization within the meaning of the Act. Whatever international functions Suffridge may still hold are not only responsibilities properly delegable by the International President to an agent but also are outside the operations of the Act. Accordingly, the Secretary's motion for summary judgment as to the Suffridge aspect of this case will be granted, because there is no dispute as to the essential facts and the Secretary is shown to have acted within his statutory discretion.

## APPENDIX I

## U.S. DEPARTMENT OF LABOR

### Office of Labor-Management and Welfare-Pension Reports

### Washington, D.C. 20210

Mr. Mozart G. Ratner
Attorney at Law
818 Eighteenth Street, NW
Washington, D. C. 20006

Dear Mr. Ratner:

This is to notify you of the disposition of a complaint filed by you with the Secretary of Labor on November 12, 1968, on behalf of the twelve Retail Clerks International Association members whose signatures are affixed thereto, challenging the regular election of officers conducted in June 1968 by the Retail Clerks International Association (RCIA), Washington, D. C.

Pursuant to Section 601 of the Labor-Management Reporting and Disclosure Act of 1959, as Amended (LMRDA), an investigation was conducted by this Office. However, it has been determined, after consultation with the Solictor of Labor, that there is not probable cause to believe that the violations found may have affected the election outcome. Therefore, civil action under Section 402 (b) of the Act is not warranted and this case has been closed by the Department.

The investigation did not disclose sufficient evidence to establish that two announced candidates on the RRR slate were coerced into withdrawing there-

from and supporting the Administration slate, as alleged in the complaint.

Moreover, the disqualification of candidate Murray Plopper and the qualification of candidate William Maguire were found to be in comformity with the RCIA Constitution.

Similarly, the use of voter eligibility cards was not violative of the RCIA Constitution or the LMRDA.

However, the investigation did disclose evidence of the following violations of the LMRDA:

1. Adequate safeguards to insure a fair election were not provided in that:

   a. Members marked their ballots in open areas so that not all voters cast secret ballots;

   b. In at least one instance, candidates were improperly denied the right to have observers at certain polls, and at the tally of the ballots;

   c. Judges and other election officials campaigned on behalf of candidates at certain polls;

   d. In at least two instances, polling place facilities and procedures were inadequate to prevent ballot tampering and ballot box "stuffing"; and,

   e. Election Judges and International Canvassing Board officials did not perform their duties, as specified in the RCIA Constitution and the RCIA Rules of Election with reference to requirements governing the use of voter eligibility cards, the signing of voter registers, the number of judges at polling places, the certification of poll reports by election officials, and the International Canvassing Board's obligation to determine the validity of all votes cast, count all legal votes cast during said election, and ascertain and verify the election results (Section 401 (c)); (The failure of local officials to apply uniformly the RCIA Rules of Election also consti-

tuted a violation of Section 401 (e));

2. Section 401(e) was also violated in that:

a. In several instances there was improper intervention with the rights of members to vote for or otherwise support the candidate or candidates of their choice by interference with campaign activities, and the deliberate dissemination of false information that the election would not be held as scheduled;

b. The election was not conducted in accordance with the RCIA Constitution and Rules of Election; and,

c. Some ballots and records pertaining to the election were not preserved for one year; and,

3. Union funds, publications and personnel were used to promote the candidacy of candidates representing both slates (Section 401(g)).

The above violations have been brought to the attention of RCIA officials who have been offered technical assistance by this Office to insure that future elections are conducted in accordance with Title IV of the Act and the RCIA Constitution and Bylaws insofar as they are not inconsistent with the Act.

Sincerely yours,

(s) Frank M. Kleiler
Director

## APPENDIX II

**U.S. DEPARTMENT OF LABOR**
**Office of the Assistant Secretary**
**Washington**
**Mar. 13, 1969**

Mr. Mozart G. Ratner
818 18th Street, N.W.
Washington, D. C. 20006

Dear Mr. Ratner:

Secretary Shultz referred to me your letters dated January 20 and January 31, with reference to the complaint filed by you on behalf of Mr. Harry J. Cimbole and the Committee for Democratic Elections, filed under section 402(a) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), in connection with the assumption of the Office of President Emeritus of the Retail Clerks International Association by James A. Suffridge on July 29, 1968.

At my direction Deputy Assistant Secretary John C. Shinn and Messrs. Kleiler, Friedman and Avery held a conference with you and your associate, Mr. Kaufman, on February 12. Mr. Shinn has reported this conference to me.

The International Executive Board of the Retail Clerks International Association in a meeting on February 28, 1969, passed a resolution withdrawing from the position of President Emeritus, those powers previously contained in sections 11(C) and (G) of the International Constitution which included the authority to convene meetings, preside over the Executive Board meetings, vote in case of a tie, and to call for nominations in the event of a vacancy on the Executive Board. With the withdrawal of these functions from the position of President Emeritus, it is the view of this Department that the President Emeritus is not authorized to perform executive functions and that such position is not an "officer" position within the meaning of section 3(n) of the LMRDA.

Accordingly, we are satisfied that any violation of section 401 of the LMRDA which may have occurred has been remedied within the intent of section 402(b), and we are, therefore, closing our files in this matter.

Sincerely yours,

(s) W. J. Usery, Jr.
Assistant Secretary of Labor