Peter J. BRENNAN, Secretary of Labor,
United States Department of Labor

v.

CONNECTICUT STATE UAW COM-
MUNITY ACTION PROGRAM COUN-
CIL (CAP) and International Union,
United Automobile, Aerospace and Agri-
cultural Implement Workers of Amer-
ica.

Civ. No. B-743.

United States District Court,
D. Connecticut.

March 19, 1974.

Henry Cohn, Asst. U. S. Atty., Hart-
ford, Conn., Alan Neigher, Bridgeport,
Conn., for plaintiffs.

William S. Zeman, Hartford, Conn.,
for defendant.

MEMORANDUM OF DECISION ON
MOTION FOR ENTRY OF STIP-
ULATED JUDGMENT

NEWMAN, District Judge.

This is a motion by the Secretary of
Labor for entry of judgment pursuant

to a stipulation between the Secretary and the defendant union to settle a suit brought to redress a violation of Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 481 et seq. Entry of judgment is opposed by individual members of the union, who were permitted to intervene, over the objection of the Secretary and the union. See Memorandum of Decision on Motion to Intervene, October 18, 1973, 60 FRD 626. The case presents the important and apparently unprecedented issue as to the role of intervening union members in objecting to the terms of a proposed settlement of a Title IV suit.

The intervenors do not assert the traditional right of intervenors to be immune from the binding effect of any stipulation to which they do not consent. See Raylite Elec. Corp. v. Noma Elec. Corp., 170 F.2d 914 (2d Cir. 1948), overruled on other grounds, Chappell & Co. v. Frankel, 367 F.2d 197 (2d Cir. 1966). They recognize that intervention rights in Title IV suits are limited, see Trbovich v. United Mine Workers, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). However, they do claim that the original parties cannot stipulate away the limited rights they have as intervenors in a Title IV suit, and that even under *Trbovich*, they have the right to object to a remedy that fails adequately to protect their interests. They do not contend that the fact of their objection is sufficient to bar entry of the stipulated judgment; they rely on the inadequacy of the stipulation.

The Secretary recognizes that *Trbovich* accords intervenors a legitimate role in suggesting the terms of an appropri-

ate remedy in a Title IV suit. But he insists that the intervenors' role is not one of "dictating the terms of the order" (Pl. Br. p. 4), a role these intervenors have certainly not claimed. By objecting to the proposed terms, the intervenors are not seeking to specify new ones.

 If the suit had been tried on the merits, and the alleged violations had been established, there is no question that the intervenors' views on the appropriateness of any proposed remedy would be entitled to serious consideration. See Trbovich v. United Mine Workers, *supra*, 404 U.S. at 737 n. 8, 92 S.Ct. 630, 30 L.Ed.2d 686. Their views cannot be disregarded simply because the union has stipulated to a remedy without conceding any violations.[1] However, any consideration of the appropriateness of the proposed remedy must recognize that rejection of the proposal will result in a trial on the merits. The factor that justifies some lessened scrutiny of the adequacy of the proposed settlement is the possibility that, because of the risks inherent in litigation, a violation by the union might not be proved, even though one may in fact have occurred. On balance, the Court accepts the Secretary's formulation that the Court "should review the objections only in light of the reasonableness of the terms of the proposed judgment." (Pl. Br. p. 4).

The challenged election involved the selection in 1972 of officers and an executive board of an intermediate level union organization with responsibility for distribution of funds for community action and especially political purposes. The election occurred at a convention of

---

1. The fact that the intervenors could not have initiated their own suit had the Secretary failed to bring this suit, Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L. Ed.2d 190 (1964), does not give the Secretary unrestricted authority to terminate on his terms the action he has begun. In the first place, had the Secretary not instituted the suit, his failure to do so might well have been subject to challenge. Schonfeld v. Wirtz, 258 F.Supp. 705 (S.D.N.Y.1966); *see also* DeVito v. Schultz, 300 F.Supp. 381 (D. D.C.1969). Secondly, the Secretary, after carrying out the statutory mandate to investigate the intervenors' complaint, found probable cause to believe violations had occurred and therefore, also pursuant to a statutory obligation, brought this suit. *See* 29 U.S.C. § 482(b). The statutory requirements of investigation and, upon a finding of probable cause, of initiation of a suit cannot be vitiated simply because the Secretary decides not to press the litigation to a conclusion. Any settlement he proposes must adequately vindicate the policies that Title IV was enacted to protect.

delegates elected from several local unions. The vote was 159 to 151. The prevailing side included the votes of 16 delegates selected by two locals at elections that were not conducted by secret ballot, which constitutes one of the alleged Title IV violations.

■ The stipulated remedy contains three essential elements. First, the union is to conduct a new election at its next regularly scheduled convention in September, 1974. Second, the Secretary has the right to investigate the elections already conducted by locals for delegates to the 1974 convention and require new ones if he determines that a Title IV violation has occurred. Third, the Secretary is to provide "technical assistance" for the conduct of those delegate elections that have not yet occurred.

It is evident that the remedy is wholly prospective and does nothing to remedy what the complaint alleges has already occurred, i. e., the unlawful election of officers and executive committee members. Under the proposal those elected will be permitted to serve out the full two-year terms to which they were elected in 1972. All the Secretary proposes to achieve is some assurance that future violations will not occur in the 1974 election. The provision for a "new" election is illusory, since all that is mandated is a holding of the next regularly scheduled election. While the prospective safeguards for the 1974 election are of some value, they totally fail to vindicate the union democracy that Title IV was enacted to protect. The Secretary claims that the proposal "provides for all of the relief requested in the complaint." (Pl. Br. p. 6). The complaint sought (a) a declaration that the 1972 election was null and void, and (b) a requirement of a new election. The Secretary's claim is incomprehensible, since neither of these elements is included in the stipulated remedy.

By failing to revoke or at least curb in any significant way the authority of

those who assumed office pursuant to election procedures that the Secretary has found probable cause to believe violated Title IV, the proposed remedy is not entitled to be accepted as reasonable by this Court.[2]

In granting intervention, this Court recognized that since there had been no determination of the merits of the alleged violations, it would have to either accept or reject the proposed remedy and could not impose a new remedy upon the union at this stage of the litigation. However, since, as all sides recognize, there is something to be gained by avoiding the costs and risks of litigation, the Court deems it appropriate to specify a condition which, if accepted by the union, would make the proposed stipulated remedy acceptable to the Court. The condition concerns the expenditure of funds for political parties and candidates prior to the September, 1974, election of new officers and executive committee members. Such expenditures are an important aspect of this union's activity. The purposes of Title IV require adequate protection that those elected by means alleged by the Secretary to be unlawful may not use their positions to expend money for political purposes contrary to the wishes of those who are challenging the election. Therefore, the Court will accept the proposed stipulation if the union agrees to a condition that prior to the election of new officers and executive committee members in September, 1974, the union will expend no funds for the support of political parties or candidates or, in the alternative, that any such proposed expenditure to be made prior to the September, 1974, election will be made only with the concurrence of a majority of the intervenors in this lawsuit.

Of course, the union is not obligated to accept this condition. However, it should recognize the fact that without such condition, the stipulated remedy will be rejected, trial on the merits will

2. Plaintiff's reliance on the stipulated judgment entered, over intervenors' objection, in Hodgson v. Upholsters, Decorators and Allied Crafts Union, Local 44, 72 Civ. 4600 (S.D.N.Y. Nov. 30, 1973) is ironical. That Title IV suit was settled by a stipulation requiring that the challenged election be "rerun," which is precisely the remedy that the intervenors here would prefer.

promptly ensue, and pending final determination of the suit, the Court will entertain and give serious consideration to a motion for a preliminary injunction to accomplish the same purpose set forth in the suggested condition. It is one thing to abide by the requirement of 29 U.S.C. § 482 that the status of elected officers not be challenged during the pendency of a Title IV suit; it would be quite another thing to take no interim steps to protect union democracy by permitting those whose own election is challenged to expend funds as they alone see fit in such a sensitive area as political contributions.

Accordingly, the motion of the plaintiff and defendant for entry of judgment pursuant to the proposed stipulation is denied, unless within fourteen days the union files a written consent to accept the condition suggested in this memorandum of decision, failing which the parties should prepare for trial to commence on April 15, 1974.