**Walter BACHOWSKI, Appellant,**

v.

**Peter BRENNAN, Secretary of Labor, United States Department of Labor and United Steelworkers of America.**

**No. 73-2029.**

United States Court of Appeals, Third Circuit.

Argued May 14, 1974.

Decided July 26, 1974.

As Amended Sept. 3, 1974.

Certiorari Granted Dec. 16, 1974.

See 95 S.Ct. 654.

Joseph L. Rauh, Jr., Rauh & Silard, Washington, D. C., Kenneth J. Yablonski, Washington, Pa., for appellant.

Irving Jaffe, Acting Asst. Atty. Gen., Richard L. Thornburgh, U. S. Atty.; Stephen F. Eilperin, and Michael H. Stein, Attys., U. S. Dept. of Justice for the Secretary of Labor.

Michael H. Gottesman, Bredhoff, Chishman, Gottesman & Cohen, Washington, D. C.; James D. English, Pittsburgh, Pa.; Bernard Kleiman, Chicago, Ill. (of counsel), for United Steelworkers of America.

Before SEITZ, Chief Judge, and VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case is an appeal from the district court's dismissal for lack of subject matter jurisdiction of a suit to compel the Secretary of Labor (the "Secretary") to bring an action to upset a union election under § 402(b) of the Labor-Management Reporting and Disclosure Act of 1959 ("L–MRDA"), 29 U.S. C. § 482(b).[1] The issue presented is

---

1. "(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization."

whether the Secretary's decision not to bring such an action is subject to judicial review.

Plaintiff Walter Bachowski was a candidate for the office of District Director of District 20 of the United Steelworkers of America (the "USWA") in an election held on February 13, 1973. He was defeated in that election by 907 votes out of approximately 24,000 votes cast. After exhausting his administrative remedies within the union, Bachowski filed a complaint with the Department of Labor on June 21, 1973, alleging numerous election irregularities and violations of the union constitution and § 401 of the L–MRDA, 29 U.S.C. § 481. Following an investigation of this complaint, the Secretary notified Bachowski and the union that he had decided not to bring an action to set aside the contested election. Bachowski thereupon brought the present lawsuit, naming as defendants the Secretary and the union. The complaint alleges, *inter alia*, that the Secretary's investigation had substantiated the enumerated charges of election irregularities and that these irregularities affected the outcome of the election, but that the Secretary nevertheless refused to file a suit to set aside the election and failed even to inform Bachowski of his reasons for that refusal. The complaint concludes that these actions by the Secretary were arbitrary and capricious and requests that the district court direct the Secretary (1) to make available to the plaintiff all evidence he has obtained concerning his in-

vestigation of the contested election, (2) to reach an agreement with the union extending the period of time for filing suit to set aside that election, and (3) to file such suit.

## I.

The only jurisdictional allegations contained in the complaint are § 402 of the L–MRDA and § 10(a) of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 702. This court has repeatedly held that the APA does not confer jurisdiction upon federal courts over cases not otherwise within their competence, Richardson v. United States, 465 F.2d 844, 849 n. 2 (3d Cir. 1972) (en banc), cert. denied, 410 U.S. 955, 93 S.Ct. 1420, 35 L.Ed.2d 688 (1973); Zimmerman v. United States Government, 422 F.2d 326, 330–331 (3d Cir.), cert. denied, 399 U.S. 911, 90 S.Ct. 2200, 26 L. Ed.2d 565 (1970); Operating Engineers Local 542 v. N.L.R.B., 328 F.2d 850, 854 (3d Cir. 1964). In addition, §. 402 of the L–MRDA confers federal jurisdiction only over actions brought by the Secretary to challenge the conduct of a union election, 29 U.S.C. § 482(b). However, although not specifically alleged in the complaint,[2] we believe that 28 U.S.C. § 1337 provides a basis for federal jurisdiction in this case.[3] The L–MRDA is an "Act of Congress regulating commerce" within the meaning of § 1337, see § 2(c) of the L–MRDA, 29 U.S.C. §. 401(c), and we believe that the instant case "arises under" that Act. Plaintiff's claim is founded directly on

---

2. In pleading that this action is brought "under" § 402 of the L–MRDA, plaintiff may have intended to allege jurisdiction founded on the existence of a question "arising under" that statute. *Cf.* 2A Moore's Federal Practice ¶ 8.9[2] at 1652 and F.R.Civ.P. Official Form 2(c). In any case, the failure of the complaint specifically to cite 28 U.S. C. § 1337 does not prevent this court from considering it as a basis for jurisdiction, for, under the facts of this case, "[i]t is not necessary to name the statutory section if in fact a complaint states a cause of action under it." Copra v. Suro, 236 F.2d 107, 114 (1st Cir. 1956).

3. Section 1337 provides:
    "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."
   The tests required by § 1337 are the same as those demanded by § 1331, except that no jurisdictional amount need be alleged. See Peyton v. Railway Express Agency, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525 (1942); 1 Moore's Federal · Practice ¶ 0.60[8.–3] at 627.

the L–MRDA in that he asserts a right, supported by his construction of § 402, to have the Secretary file a suit on his behalf to set aside the contested election where the evidence shows that violations occurred which affected its outcome and where the Secretary has not come forward with any valid reason for refusing to do so. Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Starin v. New York, 115 U. S. 248, 257, 6 S.Ct. 28, 29 L.Ed. 388 (1885). In a closely analogous case, we held that a suit by the business agent of a union local for injunctive relief and declaratory judgment that he was not barred by 29 U.S.C. § 504 from continuing in office was a case "arising under" the L–MRDA and that, therefore, there existed federal question jurisdiction pursuant to 28 U.S.C. § 1337. Serio v. Liss, 300 F.2d 386, 387–388 (3d Cir. 1961).[4]

Our conclusion that the district court had federal question jurisdiction to entertain this case, however, does not resolve what is the underlying issue in this case: whether the Secretary's decision not to bring suit to upset a union election under § 402 of the L–MRDA is subject to judicial review. Although the district court's dismissal was technically for lack of subject matter jurisdiction, the record reveals that its action was based on a determination that such a decision by the Secretary is not reviewable.[5] Thus, in the interest of judicial economy, it is necessary to reach this issue on this appeal and decide, in effect, if plaintiff Bachowski has stated a claim upon which relief can be granted.

II.

■ Plaintiff seems to be entitled to judicial review under the APA, 5 U.S.C. § 702, unless the Secretary's decision not to bring suit to set aside the election is excluded. from the coverage of the APA by § 701(a),[6] which provides:

"This chapter applies, according to the provisions thereof, except to the extent that—

4. It is possible that federal jurisdiction in this case also exists under 28 U.S.C. § 1361, since the complaint may be read to allege that the Secretary has acted contrary to law. See Howard v. Hodgson, 490 F.2d 1194, 1195 (8th Cir. 1974); Wright & Miller, Federal Practice and Procedure § 1350, n. 54 (1969). In view of our holding below as to plaintiff's right to the remedy of judicial review under the APA, however, it is not necessary to decide whether the complaint also states a claim for which mandamus relief can be granted, for the scope of judicial review under the APA seems clearly broader than that available upon a petition for mandamus. As we held in Richardson v. United States, 465 F.2d 844, 849 (3d Cir. 1972) (en banc), cert. denied, 410 U.S. 955, 93 S.Ct. 1420, 35 L.Ed.2d 688 (1973):

"In order for mandamus to issue, a plaintiff must allege that an officer of the Government owes him a legal duty which is a specific, plain ministerial act 'devoid of the exercise of judgment or discretion.' . . . An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt."

Thus, while a petition would issue to order the Secretary to file suit to set aside an election where his own investigation revealed

violations affecting the outcome, mandamus relief would not be available to question whether the findings and conclusions of such an investigation were arbitrary and capricious and an abuse of discretion. See the discussion of Howard v. Hodgson, *supra*, at notes 13 and 16 below. But see Peoples v. United States Department of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561, 565 (1970) (Mandamus may issue to correct abuse of discretion).

5. There was no opinion accompanying the district court's order granting defendants' motion for dismissal, but at the conclusion of the November 8, 1973, hearing, after extensive discussion of the question of reviewability, the court concluded that it lacked "authority" to find that the Secretary's actions were arbitrary and capricious and to order him to file suit. See Doc. 9 at p. 27 (W.D.Pa., Civil No. 73–0954).

6. The Secretary argues that § 606 of the L–MRDA, 29 U.S.C. § 526, which governs the applicability of the APA to actions taken pursuant to the L–MRDA, does not provide plaintiff here a basis for judicial review, since the Secretary's determination not to bring suit is not an "adjudication." Whatever the merit of this contention (see the definition of "adjudication" in 5 U.S.C. § 551(7)), it has no bearing on plaintiff's

"(1) statutes preclude judicial review; or

"(2) agency action is committed to agency discretion by law."

The burden of establishing such exclusion, however, is on the defendants. See Abbott Laboratories v. Gardner, 387 U. S. 136, 140–141, 87 S.Ct. 1507, 18 L.Ed. 2d 681 (1967). As the Second Circuit has noted:

"Absent any evidence to the contrary, Congress may rather be presumed to have intended that the courts should fulfill their traditional role of defining and maintaining the proper bounds of administrative discretion and safeguarding the rights of the individual."

Cappadora v. Celebrezze, 356 F.2d 1, 6 (2d Cir. 1966). With this construction in mind, we turn to an examination of the purpose behind the enforcement procedure set forth in Title IV of the L–MRDA and the nature of the discretion exercised by the Secretary pursuant to that procedure in order to determine if the Secretary's action in this case is reviewable.

—A—

Defendants contend that Congress' intent to preclude judicial review and to commit to the Secretary's absolute discretion the decision whether to bring suit can be inferred from two features of the L–MRDA: (1) the Secretary has exclusive authority to sue to set aside a union election, and (2) he must exercise that authority within 60 days of the filing of a complaint. After careful consideration of defendants' arguments and the cases cited in support thereof, we do not find that there exists the necessary "clear and convincing evidence" of a legislative intent to restrict judicial review. See Citizens To Preserve Overton Park,

Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Abbott Laboratories v. Gardner, supra, 387 U.S. at 141, 87 S.Ct. 1507.

Section 403 of the L–MRDA, 29 U.S.C. § 483, makes suit by the Secretary the "exclusive" post-election remedy for violations of Title IV of the Act, and the Supreme Court held in Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), that union members are thereby prohibited from initiating a private suit to set aside an election. In Trbovich v. United Mine Workers, 404 U.S. 528, 532, 92 S.Ct. 630, 633, 30 L.Ed.2d 686 (1974), the Court described the purpose behind this procedure as follows:

"A review of the legislative history shows that Congress made suit by the Secretary the exclusive post-election remedy for two principal reasons: (1) to protect unions from frivolous litigation and unnecessary judicial interference with their elections, and (2) to centralize in a single proceeding such litigation as might be warranted with respect to a single election. Title IV as enacted serves these purposes by referring all complaints to the Secretary so that he can screen out frivolous ones, and by consolidating all meritorious complaints in a single proceeding, the Secretary's suit in federal district court."

In light of these purposes, the Court went on to hold in *Trbovich* that Congress did not intend to prevent a union from intervening in a suit brought by the Secretary, but that such intervening union was not entitled to raise additional grounds for setting aside the election, not contained in the Secretary's complaint, since that would circumvent the Secretary's screening function. *Id.* at 536–537, 92 S.Ct. 630.[7]

---

claim for relief because the APA subjects to judicial review not only "[a]gency action made reviewable by statute," but also "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

7. We recognize that in reaching this conclusion, the Supreme Court employed some broad and unqualified language concerning the intent of Congress in assigning this screening function to the Secretary:

"With respect to litigation by union members, then, the legislative history supports

■ Applying this reasoning to the instant case, we do not believe that a limited judicial review of the Secretary's decision not to bring suit would in any way conflict with the purposes behind the Secretary's screening function. Unions would not be subjected to unnecessary judicial interference with their elections, since under the "arbitrary and capricious" standard of review, a court would overturn the Secretary's judgment only where there is compelling evidence that he has ignored a meritorious complaint. See 5 U.S.C. § 706(2)(A) and Citizens To Preserve Overton Park, Inc. v. Volpe, *supra,* 401 U.S. at 416, 91 S.Ct. 814. Furthermore, unions would remain protected from harassment or the burden of frivolous litigation, since the primary responsibility for defending suits such as this one would lie with the Secretary.[8] Finally, in those rare instances when a challenge to the Secretary's decision not to bring suit is successful, the subsequent litigation would still be centralized in a single proceeding. We therefore conclude that in making a suit by the Secretary the exclusive post-election remedy, Congress did not intend to make the Secretary's decision not to bring suit unreviewable.

On the contrary, we believe judicial review would further the general policy of Title IV of the L–MRDA by ensuring that the Secretary does not deny a remedy to those whose rights Congress sought to protect. As one court has observed:

"Indeed, the very exclusivity of the remedy serves to emphasize the necessity of some degree of Court supervision. To rule otherwise would enable the Secretary to frustrate the will of Congress; it would leave the Secretary's conduct immune from scrutiny in matters where he is charged with significant responsibilities that must be carried out if the sweeping congressional directive to infuse basic principles of democratic free election into union organizations is to be implemented."

DeVito v. Shultz, 300 F.Supp. 381, 382 (S.D.N.Y.1969).

■ Nor do we find sufficient evidence of a congressional intent to restrict judicial review in the requirement of § 402(b) that the Secretary file suit within 60 days after the filing of a complaint. We realize that, if permitted, a challenge to the Secretary's decision not

---

the conclusion that Congress intended to prevent members from pressing claims *not thought meritorious by the Secretary,* and from litigating in forums or at times different from those chosen by the Secretary." Id. at 536, 92 S.Ct. at 635 (emphasis added).

"[W]e think Congress intended to insulate the union from any complaint that *did not appear meritorious to* both a complaining member and *the Secretary.*" Id. at 537, 92 S.Ct. at 635 (emphasis added).

However, we do not believe that the Court intended to imply by that language that the Secretary's decision was unreviewable, for that issue was not presented in *Trbovich.* Rather, the above-quoted statements must be read in the context of the Court's holding that an intervening union would not be permitted to circumvent the screening function assigned to the Secretary by raising additional claims which he had not had an opportunity to evaluate or had already rejected.

8. The USWA contends that another legislative concern in enacting Title IV was to avoid "unnecessary expenditure of the limited resources of the Secretary of Labor," Hodgson v. Steelworkers Local 6799, 403 U. S. 333, 339, 91 S.Ct. 1841, 1845, 29 L.Ed.2d 510 (1971), and that this objective will be frustrated if the Secretary can be required to defend his decisions not to bring suit. We do not consider this argument sufficiently persuasive to support a holding of nonreviewability on the facts of this case. In the first place, Congress' "concern" with husbanding the Secretary's resources was mentioned in *Hodgson* merely as a secondary reason for requiring an individual to exhaust his union remedies before filing a complaint with the Secretary. Moreover, the expense to an agency of defending its decisions can hardly be considered a valid reason for restricting judicial review. Finally, the Secretary could help to discourage frivolous suits against him and thus avoid unnecessary expenditures by providing in each case an adequate statement of his reasons for not bringing suit.

to bring suit may in some cases result in a court ordering the Secretary to file suit long after this time limit, thereby conflicting with Congress' concern to assure that the cloud on the incumbents' titles to office will be resolved as quickly as possible, Wirtz v. Bottle Blowers Ass'n, 389 U.S. 463, 468–469, n. 7, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968). That concern, however, may be subordinated to the goal of providing an effective remedy for election irregularities. Thus, the Secretary has been allowed to file suit beyond the 60-day period not only in those cases where the union has waived the requirement to permit additional investigations or settlement negotiations, Hodgson v. Machinists Lodge 851, 454 F.2d 545 (7th Cir. 1971); Hodgson v. International Pressmen, 440 F.2d 1113 (6th Cir.), cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971), but also where the union has by its conduct impeded the Secretary's investigations, Wirtz v. Carpenters Local 1622, 285 F.Supp. 455 (N.D.Cal.1968); Wirtz v. Independent Workers Union, 65 L.R.R.M. 2104, 2108 (M.D.Fla.1967); Wirtz v. Great Lakes District Local 47, 240 F.Supp. 859 (N.D.Ohio 1965). Although here it is the alleged wrongdoing of the Secretary, rather than the union, which has caused the delay, we believe a court would be acting consistently with the fundamental purpose of the L–MRDA in entertaining a suit beyond the time limit in those rare cases where the Secretary's original decision not to file suit has been successfully challenged.

—B—

■ In concluding that the procedures set forth in §§ 402 and 403 do not evince a congressional intent to preclude judicial review of the Secretary's decision whether to bring suit, we do not mean to deny that the Secretary has considerable discretion in the exercise of his enforcement powers. Speaking of the Secretary's duty to screen complaints before filing suit, the Court stated in Calhoon v. Harvey, *supra,* 379 U.S. at 140, 85 S.Ct. at 296:

"It is apparent that Congress decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest . . . . Reliance on the discretion of the Secretary is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and where that fails, to utilize the agencies of [the] Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts."

However, the fact that an agency action involves some discretion does not necessarily make it unreviewable. See Ferry v. Udall, 336 F.2d 706, 711 (9th Cir. 1964). Rather,

"[t]he question is whether the Secretary . . . enjoys absolute discretion—whether such a decision is totally committed to the judgment of the agency because of the practical requirements of the task to be performed, absence of available standards against which to measure the administrative action, or even the fact that no useful purpose could be served by judicial review."

Cappadora v. Celebrezze, *supra,* 356 F.2d at 5–6.

■ The Secretary contends that his decision whether to bring suit under § 402 of the L–MRDA is an exercise of prosecutorial discretion which is unreviewable and cannot be compelled by a court. See Confiscation Cases, 74 U.S. (7 Wall.) 454, 19 L.Ed. 196 (1869); Inmates of Attica Correctional Facility v. Rockefeller, 477 F.2d 375 (2d Cir. 1973); Peek v. Mitchell, 419 F.2d 575 (6th Cir. 1970); Spillman v. United States, 413 F.2d 527 (9th Cir.), cert. denied, 396 U.S. 930, 90 S.Ct. 265, 24 L.Ed.2d 228 (1969); Smith v. United States, 375 F.2d 243 (5th Cir.), cert. denied, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed. 2d 106 (1967); Powell v. Katzenbach, 123 U.S.App.D.C. 250, 359 F.2d 234 (D.C.Cir. 1965), cert. denied, 384 U.S. 906,

86 S.Ct. 1341, 16 L.Ed.2d 359 (1966). Not every refusal by a Government official to take action to enforce a statute, however, is unreviewable. See Adams v. Richardson, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973). *Cf.* Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Although the Secretary's decision to bring suit bears some similarity to the decision to commence a criminal prosecution, the principle of absolute prosecutorial discretion is not applicable to the facts of this case.

▨▨▨▨ To begin with, we believe that the doctrine of prosecutorial discretion, should be limited to those civil cases which, like criminal prosecutions, involve the vindication of societal or governmental interest, rather than the pro-

tection of individual rights. The *Confiscation Cases, supra,* on which the Secretary primarily relies,[9] were suits to confiscate property used in aid of rebellion; there was little question that they were "for the benefit of the United States," *id.,* 74 U.S. at 457, rather than on behalf of any aggrieved individuals. However, the legislative history of the L–MRDA demonstrates a deep concern with the interest of individual union members, as well as the general public, in the integrity of union elections.[10] Thus, in seeking to remedy violations of the Act, the Secretary acts not only for the benefit of the country as a whole, but also on behalf of those individuals whose rights have been infringed.[11] To grant the Secretary absolute discretion

9. The Secretary also cites Georgia v. Mitchell, 146 U.S.App.D.C. 270, 450 F.2d 1317, 1321 (1971), for the proposition that the principles regarding prosecutorial discretion enunciated in criminal cases are applicable to the exercise of prosecutorial discretion in a civil context. However, the doctrine applied there was *not* that the discretion of the Attorney General and the Secretary of IIEW is absolute, but only that judicial review of their discretionary conduct is narrowly restricted. Since the court found that the prosecution of *de jure* segregation in Georgia without challenging *de facto* segregation elsewhere did not constitute selective or discriminatory enforcement of school desegregation, it held that the case then before the court was inappropriate for judicial review.

10. "It needs no argument to demonstrate the importance of free and democratic union elections. Under the National Labor Relations and Railway Labor Acts the union which is the bargaining representative has power, in conjunction with the employer, to fix a man's wages, hours, and conditions of employment. The individual employee may not lawfully negotiate with his employer. Ile is bound by the union contract. In practice, the union also has a significant role in enforcing the grievance procedure where a man's contract rights are enforced. The Government which gives unions this power has an obligation to insure that the officials who wield it are responsive to the desires of the men and women whom they represent. The best assurance which can be given is a legal guaranty of free and periodic elections.

The responsiveness of union officers to the will of the members depends upon the frequency of elections, and an honest count of the ballots. Guaranties of fairness will preserve the confidence of the public and the members in the integrity of union elections."

S.Rep.No.187, 86th Cong., 1st Sess. (1959), quoted at p. 2336, U.S.Code Cong. & Admin.News. The Supreme Court has summarized this purpose as follows:

"The LMRDA was the first major attempt of Congress to regulate the internal affairs of labor unions. Having conferred substantial power on labor organizations, Congress began to be concerned about the danger that union leaders would abuse that power, to the detriment of the rank-and-file members. Congress saw the principle of union democracy as one of the most important safeguards against such abuse, and accordingly included in the LMRDA a comprehensive scheme for the regulation of union elections."

Trbovich v. United Mine Workers, *supra,* 404 U.S. at 530–531, 92 S.Ct. at 632.

11. This case is. therefore, distinguishable from Vaca v. Sipes, 386 U.S. 171, 182–183, n. 8, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967), where the Court held that the General Counsel of the National Labor Relations Board has unreviewable discretion to refuse *to institute an unfair labor practice complaint* because, under § 10(c) of the National Labor Relations Act, "[t]he public interest in effectuating the policies of the federal labor laws, not the wrong done the individual employee, is always the Board's principal concern in fashioning unfair labor practice remedies."

in this situation seems particularly inappropriate, for if he wrongfully refuses to file suit, individual union members are left without a remedy.

Furthermore, as Professor Davis has observed, perhaps the most convincing reason for the unreviewability of prosecutorial discretion is that a prosecutor "may be actuated by many considerations that are beyond the judicial capacity to supervise." Davis, Administrative Law Treatise, § 28.16 at 984 (1970 Supp.). The factors to be considered by the Secretary, however, are more limited and clearly defined: § 482(b) of the L-MRDA provides that after investigating a complaint, he must determine whether there is probable cause to believe that violations of § 481 have occurred affecting the outcome of the election.[12] Where a complaint is meritorious and no settlement has been reached which would remedy the violations found to exist, the language and purpose of § 402(b) indicate that Congress intended the Secretary to file suit.[13] Thus, apart from the possibility of settlement, the Secretary's decision whether to bring suit depends on a rather straightforward factual determination, and we see nothing in the nature of that task that places the Secretary's decision "beyond the judicial capacity to supervise." See p. 88, supra.

■ Nevertheless, the question remains as to what the proper scope of such judicial review should be. In DeVito v. Shultz, supra, 300 F.Supp. at 384, the court held that "the Secretary must provide those who petitioned for his intervention with an adequate written statement of his reasons for non-intervention." Since the letter explaining the Secretary's decision not to bring suit conceded that serious irregularities had occurred but failed to mention the Secretary's conclusions as to the effect of those irregularities on the outcome of the election, the court in DeVito ordered the Secretary to reconsider his decision, and if after reconsideration he was still determined not to act, the court held that the individual complainant is entitled to a fuller statement of reasons. We have found no case which questions this requirement. Indeed, in Ravaschieri v. Shultz, supra at 2274, although the court concluded that it had no jurisdiction to review the Secretary's refusal to bring suit, it stressed the importance of the fact that he had made known the reasons for that decision. In addition, "a brief statement of the grounds for denial" is required by the APA, 5 U.S.C. § 555(e), and as Professor Davis has pointed out, the practical reasons for requiring findings are as applicable to informal agency action as to action based on formal hearings. Davis Administrative Law Treatise § 16.00 at 559 (1970 Supp.).[14] Thus, judicial review of the

---

12. Despite its literal language, § 402(b) does not require the Secretary to bring an action whenever he finds a violation that has not been remedied, but rather confers discretion upon him also to determine whether there is probable cause to believe that such violation affected the outcome of the election. Wirtz v. Bottle Blowers Ass'n, supra, 389 U.S. at 472, 88 S.Ct. 643; Howard v. Hodgson, supra; Ravaschieri v. Shultz, 75 L.R.R.M. 2272 (S.D.N.Y.1970); Schonfeld v. Wirtz, 258 F.Supp. 705, 708 (S.D.N.Y.1966); S. Rep.No.187, 86th Cong., 1st Sess. (1959), quoted at p. 2337, U.S.Code Cong. & Admin. News.

13. After holding that the Secretary had discretion not to file suit where he has determined that there is not probable cause to believe that such violations as occurred affected the outcome of the election, the court in Howard v. Hodgson, supra, 490 F.2d at 1197, went on to state:

"This is not to say that the Secretary's discretion under § 482 is absolute. If the Secretary finds probable cause to believe that a violation has occurred and also finds probable cause to believe that the violation may have affected the outcome of the election, the Act requires that he commence an action against the labor organization."

14. Two of these reasons are clearly applicable to the instant case: facilitating judicial review and assuring careful administrative consideration. The latter would be relevant even if the Secretary's decision were unre-

Secretary's decision not to bring suit should extend at the very least to an inquiry into his reasons for that decision to ensure that he has not abused the discretion granted him by the L–MRDA.

The relief requested by the complaint in the instant case, however, goes beyond such an inquiry. Anticipating the Secretary's reasons, plaintiff seeks an opportunity to challenge the factual basis for his conclusion either that no violations occurred or that they did not affect the outcome of the election. Only one court has held that it had the power to review this exercise of the Secretary's discretion. Schonfeld v. Wirtz, *supra*, 258 F.Supp. at 708–709.[15] The majority of courts considering the matter have refused to conduct such a review. Howard v. Hodgson, *supra*; Orphan v. Hodgson, 78 L.R.R.M. 2825 (N.D.Ill.1971); Ravaschieri v. Shultz, *supra*; McArthy v. Wirtz, 65 L.R.R.M. 2411 (E.D.Mo.1967); Katrinic v. Wirtz, 62 L.R.R.M. 2557 (D.D.C.1966); Altman v. Wirtz, 56 L.R.R.M. 2651 (D.D.C. 1964). Insofar as these cases stand for the proposition that the Secretary's determination of the merit of a complaint is completely unreviewable,[16] we decline to follow them. The Secretary may as

---

viewable. See Johnson v. Chairman of New York Board of Parole, 500 F.2d 925 (2d Cir. 1974). In cases where agency action *is* subject to judicial review, this court has repeatedly held that an adequate statement of reasons is necessary for courts to perform their function properly. See United States v. Ziskowski, 465 F.2d 480 (3d Cir. 1972); United States v. Neamand, 452 F.2d 25 (3d Cir. 1971); Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970). *Cf.* Dry Color Mfrs. Ass'n v. Department of Labor, 486 F.2d 98, 105–106 (3d Cir. 1973). Since the Supreme Court's decision in SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L. Ed. 626 (1943), this principle has been followed by other courts in a wide variety of context. See generally Davis, Administrative Law Treatise § 16.05 (1958 ed. & 1970 Supp.).

15. See also Brennan v. Connecticut State UAW, Community Action Program Council, 373 F.Supp. 286 (D.Conn.1974), where the court cited both Schonfeld v. Wirtz, *supra*, and DeVito v. Shultz, *supra*, with approval in holding that the views of intervening union members could not be disregarded just because the union stipulated to a remedy without conceding any violations.

In *Schonfeld* the Secretary's investigation revealed that violations of the L–MRDA had occurred, and its holding could therefore be limited to permit review only of the Secretary's determination that there is not probable cause to believe that such violations affected the outcome of the election. See McArthy v. Wirtz, 65 L.R.R.M. 2411, 2413 (E.D.Mo.1967). However, we believe that there is no meaningful distinction between the finding as to the existence of a violation and the finding as to its effect on the election. We note that this distinction was explicitly re-

jected in Howard v. Hodgson, 356 F.Supp. 692, 694 (E.D.Mo.1973), aff'd, 490 F.2d 1194 (8th Cir. 1974), where the court concluded that an even stronger case for deferring to the Secretary's expertise existed where he had determined that a violation did not affect the outcome of an election than where he found no violation at all.

16. Since nearly all of these cases discussed the issue of reviewability in the context of mandamus, it is unclear whether they necessarily imply that the Secretary's discretion is absolute whatever the basis for jurisdiction or relief. See note 4, *supra*. In Ravaschieri v. Shultz, *supra* at 2275, for example, the court was careful to distinguish *Schonfeld* on the ground that the decision not to bring suit there was "palpably arbitrary and capricious," while in *Ravaschieri* the court found that the Secretary properly exercised his discretion after his investigation disclosed that the plaintiffs had failed to invoke their internal remedies as required by § 402(a), and that it would be difficult to prove that any violations which occurred affected the outcome of the election. Similarly, in Howard v. Hodgson, *supra*, the Court of Appeals did not even confront the issue of whether the Secretary's factual findings are reviewable, concluding only that the Secretary acted within his discretion in not filing suit where he determined that such violations as occurred did not affect the outcome of the election. See note 12, *supra*. However, the district court had decided that issue, 83 L.R.R.M. 3023, 3025 (E.D.Mo. 1973), and thus the Eighth Circuit's affirmance of the district court's dismissal apparently means that mandamus will not issue to review the Secretary's finding that a complaint is without merit.

easily defeat the purpose of the L–MRDA by ignoring overwhelming evidence of violations affecting the outcome of an election as by refusing to file suit for reasons not intended by Congress. In either case, judicial review should be available to ensure that the Secretary's actions are not arbitrary, capricious, or an abuse of discretion. The Supreme Court has explained this scope of review as follows:

"Scrutiny of the facts does not end, however, with the determination that the Secretary has acted within the scope of his statutory authority. Section 706(2)(A) requires a finding that the actual choice made was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (1964 ed., Supp. V). To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. [Citations omitted.] Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."

Citizens To Preserve Overton Park, Inc. v. Volpe, *supra*, 401 U.S. at 416, 91 S.Ct. at 823. Thus, on remand, plaintiff is entitled to a sufficiently specific statement of the factors upon which the Secretary relied in reaching his decision not to file suit so that plaintiff may have information concerning the allegations contained in his complaint.[17]

For the above reasons, the district court order granting the motion to dismiss for lack of subject matter jurisdiction will be vacated and the case will be remanded for further proceedings consistent with this opinion.

---

17. The court recognizes that certain data in the Secretary's files may be privileged and confidential. *Cf.* Weisberg v. U. S. Department of Justice, 489 F.2d 1195 (D.C.Cir. 1973); Frankel v. Securities & Exchange Commission, 460 F.2d 813 (2d Cir. 1972). Whether the Government's interest in maintaining the confidentiality of such information outweighs the plaintiff's interest in their production should be a matter for the trial court to decide on motions for discovery so as to assure "a fair determination of the issues." Mitchell v. Roma, 265 F.2d 633, 636 (3d Cir. 1959).