Civil Action No. 73 0954

WALTER BACHOWSKI, PLAINTIFF

*v.*

PETER J. BRENNAN, Secretary of Labor, United States Department of Labor, and UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, DEFENDANTS

## STATEMENT OF THE SECRETARY OF LABOR

On November 12, 1973, this Court, upon oral argument, dismissed the Complaint filed herein by the plaintiff, and further denied plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction. On appeal, the United States Court of Appeals for the Third Circuit, in a Judgment entered on July 26, 1974, ordered that the aforementioned Judgment of the District Court be vacated and the cause remanded for further proceedings consistent with the Opinion of the Third Circuit filed on July 26, 1974, as amended September 3, 1974.

On remand, this Court ordered the Secretary of Labor to furnish a statement of the reasons and explanations underlying his decision not to file suit pursuant to the complaint received from Mr. Walter Bachowski, a member in good standing of the United Steelworkers of America, AFL–CIO–CLC (hereinafter referred to as the International).

Accordingly, defendant, Secretary of Labor, is furnishing the following information. However, it is respectfully submitted that defendant, Secretary of Labor, in

furnishing this statement does not waive any legal claims raised in connection with this matter.[1]

Pursuant to a complaint received on June 21, 1973 from Mr. Walter Bachowski, the Secretary of Labor conducted an investigation of the February 13, 1973 election conducted by the International for the office of District Director, District 20. District 20 is the fourth largest Steelworker District and covers eight contiguous counties in Western Pennsylvania, running from Pittsburgh in the South to Erie in the North, and Ohio to the West. At the time of the election, District 20 was comprised of approximately 67,419 members.

In total, the Secretary's representatives investigated 80 of District 20's 190 local unions, including all 27 of the former District 50 locals (the Secretary has found from past experience that former District 50 locals have encountered an unusual number of election related problems due to their recent assimilation into the Union). In formulating an investigative plan the Department of Labor focused upon and investigated each and every local brought to its attention by Mr. Bachowski, both orally and in his written complaint. Investigators, while in the geographical areas of the locals designated by Mr. Bachowski, reviewed additional local unions on a random basis in those areas. Also, red flag locals were selected on a district wide basis where, for example, voter turnouts appeared to be inordinately high. In addition to the 80 in depth local union investigations, investigators interviewed numerous individuals including members, union officers and Mr. Bachowski himself concerning the events surrounding the District 20 election. Investigators also reviewed and examined documentary evidence for fur-

---

[1] Defendant, Secretary of Labor, now has pending before the Supreme Court a Petition for Writ of Certiorari to the United States Court of Appeals for the Third Circuit.

ther investigative leads or potential violations. During the course of the entire proceeding, investigators worked hand in hand with Mr. Bachowski on an ongoing basis.

Because of the size of District 20 and the obvious limitations on available manpower (the Department of Labor was concurrently investigating elections conducted in five other Districts as well), it was not possible to investigate each and every local union in District 20. However, the above described investigative design was broadly conceived and was reasonably calculated to disclose all violations which may have occurred in the District wide election.

Therefore, it is readily apparent the Department conducted a thorough and exhaustive investigation into the District 20 election. Set forth below is a detailed analysis of the investigative findings, along with the numerical estimates of the votes which may have been affected as a result of these violations. In reaching these numerical estimates, we have not considered figures which constitute a reasonably probable effect, but rather, will set forth votes which have been calculated to a maximum theoretical possibility. By using these maximized figures, we are giving in most instances the benefit of the doubt to Mr. Bachowski. For example, Local Union 2789 which will be discussed herein failed to conduct an election. Thus, by assuming that the entire membership of 249 would have voted, and moreover would have voted unanimously for Mr. Bachowski, we arrived at the maximized figure for possible effect on outcome of 249 votes. This method of computation, while theoretically possible, is highly unlikely, since, for example, in the entire District only about one-third of the members voted in the election. Thus, the reasonable probability in this Local Union is that only approximately one-third of the members would have voted had there been an election, and

that those voting would not have given Mr. Bachowski an unanimity of the vote.

### (1) *Local Union 2203*

The investigation in this Local Union disclosed a failure to mail a notice of the election to ten members working on one employer site, and consequently, they were never apprised of the election and did not vote. Thus, ten members were potentially denied the right to vote in this Local Union as a result of the failure to mail notice of the election as required by Section 401 (e) of the Act. In arriving at this figure of ten, we would note, however, that since only nine of the seventeen members at the other employer location voted, it seems highly unlikely that all ten members would have voted in the election had they been notified.

### (2) *Local Union 2789*

The files indicate that Local Union 2789 voted at its monthly membership meeting not to conduct an election because of a lack of funds. Accordingly, no election was conducted. However, since the Local Union was obligated by law to conduct an election, it was concluded that the total membership of 249 were potentially denied the right to vote in violation of Section 401 (a) of the Act. As noted above, in computing the total number of votes that may have been affected by this violation, we have included the entire membership of the Local Union, and have further assumed that the entire membership may have voted for Mr. Bachowski.

### (3) *Local Union 3186*

This Local Union failed to provide adequate safeguards to insure a fair election. For example, the persons conducting the election hand-carried ballots to members at their work stations, who were then permitted to vote.

There was no specific voting area and no voter eligibility list was used. The entire conduct of this election left a great deal to be desired. It was thus concluded that the Local Union failed to provide adequate safeguards to insure a fair election and that this violation "may have affected the outcome" of the election to the extent of 16 votes. This figure of 16 votes represents the entire margin by which Kluz prevailed over Bachowski.

### (4) *Local Union 3713*

The investigation of this Local Union disclosed very loose ballot control (many ballots were found lying around the grounds of the employer), and as a result the Local was unable to account for 39 ballots. The union thus failed to provide adequate safeguards to insure a fair election and this violation "may have affected" 124 votes. This figure, as in the previous Local, represents the full margin of victory by Kluz over Bachowski.

### (5) *Local Union 7496*

This Local Union, which is comprised of six members, failed to conduct an election. Our investigation disclosed that these members were eligible to vote in the election and thus, the six members were denied the right to vote in violation of Section 401 (e) of the Act. For purposes of possible effect on outcome, it is assumed that all six members would have voted had an election been conducted and that all six members would have voted for Bachowski.

### (6) *Local Union 7749*

This Local Union, consisting of 25 members, failed to schedule and conduct an election. Although there appeared to be voter apathy in this Local Union, it was concluded that these 25 members had been denied the right to vote. Hence, the figure of 25 was assigned as the potential "effect on the outcome."

### (7) Local Union 12055

The 51 members of this Local Union work at four separate employer locations. The investigative files indicated that 38 members at three of those sites were not notified of the election in violation of Section 401 (e) of the Act. In addition, the investigation disclosed that ballots were distributed and received in such a manner that secrecy could not be maintained. All 13 members voting at this location cast their ballots in favor of Kluz and thus it was considered that these 13 ballots may have been affected as a result of this violation. Thus, in this Local Union, a total potential effect on outcome of 51 votes was derived by assuming that the 38 members not notified would all have voted and cast their ballots in favor of Bachowski, and that the 13 members were influenced by the non-secret conditions to vote for Kluz.

### (8) Local Union 12059

This Local Union consists of approximately 185 members employed at two separate locations. The investigation revealed that nine members at one of these locations were not mailed notices of the election as required. The file further revealed that these members were in fact eligible to vote. Thus, it was concluded that the outcome of this election may potentially have been affected to the extent of eight votes as a result of this violation, since one of the nine members who was not notified of the election actually voted.

### (9) Local Union 13972

The investigative file disclosed that five members of this Local Union who were working at a plant site removed from the remainder of the local members were denied an opportunity to vote in this election. The files disclosed that the Election Committee failed to provide

facilities for these members. Thus, five votes may have been affected by the violation in this Local Union.

### (10) *Local Union 14210*

A review of the investigative file in this Local Union disclosed two violations. The evidence indicated that one member was denied the right to vote; the Local failed to provide voting facilities for a member who was unable to reach the polls because of a work conflict. In addition, the evidence indicated that an ineligible member was permitted to vote in violation of Section 401 (e) of the Act. Thus, two members were potentially affected by the violations that occurred in this Local Union.

### (11) *Local Union 14661*

In this Local Union, the investigation revealed that certain members marked their ballots in such proximity to the registration table that secrecy of the ballot may have been compromised. The investigation also revealed evidence that one member saw how another member voted. The result in this election was Kluz 34, Bachowski 20, and Brummitt 11. The possible effect on outcome was 14, the margin of victory by Kluz over Bachowski.

### (12) *Local Union 14768*

The files reveal that although an election was conducted in this Local Union, no return sheet was submitted to the International. The evidence indicated that because the Financial Secretary thought he had not conducted the election properly, he destroyed all records and did not submit a return. Thus, the 17 members casting ballots in this election were denied a right to vote in violation of Section 401 (e) of the Act. (It should be noted that the union purports to have evidence of the actual return in this Local Union, which showed Kluz winning by one vote.)

## (13) *Local Union 14800*

A review of the investigative files on Local 14800 revealed the existence of three violations. The evidence very strongly indicated that the local failed to provide adequate safeguards to insure a fair election in violation of Section 401 (c) of the Act. There was evidence that ballots were submitted for some 40 members who did not in fact vote in the election. Moreover, individuals other than election tellers had access to and handled ballots without adequate supervision. In view of the lack of adequate ballot control and the strong indication of ballot fraud in this Local Union, it was concluded by the Secretary that all 110 votes received by Kluz should be considered as possibly having been affected by this violation. (118 votes were cast in the election with Bachowski receiving 3 and Brummitt receiving 5.) The evidence also indicated that 78 members at three employer locations were not adequately notified of the election in violation of Section 401 (e) of the Act. Since 38 of these members voted, only 40 members may be considered for purposes of effect on outcome (the 38 who voted were included in the figure of 110 above). Finally, the file disclosed that funds of Local Union 14800 were expended for a campaign rally supporting the candidacy of Mr. Kluz. Evidence tends to indicate that 50 to 100 members attended the party, including some officers and members of locals other than 14800. Thus, using maximized figures, 100 votes may have been affected by this violation (in addition to the total number of members already included above). However, we would note that the union has indicated that many members attending this party were ardent Kluz supporters. Thus, the illegal expenditure would have had little effect, if any, on their voting preference. We were unable to identify the majority of the members of the party; the union contends that most of

the members in attendance were members of Local Union 14800, whose entire vote was regarded as possibly affected by other violations as noted above.

### (14) *Local Union 14820*

The investigative file in this Local Union indicated that there was a failure to maintain secrecy of the ballot in violation of Section 401 (a) of the Act, as well as a failure to adequately notify members of the election in violation of Section 401 (e) of the Act. The investigation disclosed that 22 ballots cast in this election were signed on the back by the voting member—an obvious violation of secrecy. Although officers of the Local claim they were not aware of this until a subsequent review of the ballots with a Department of Labor investigator, this does not cancel the violation, which may have affected 22 votes. The evidence also indicated 39 members at two employer sites were not notified of the election. Assuming that all 39 would have voted and that they would have cast their votes for Bachowski, 39 votes may have been affected by this violation. Finally, the file disclosed that through inaccurate tallies by the responsible local union officers, Bachowski received one less vote than his entitlement while Kluz received one additional vote. Hence, an extra two votes must be considered as having been affected by the Local's failure to properly credit the votes to the proper candidates.

### (15) *Local Union 14945*

The investigative file in this Local Union revealed that ballots were marked on tables by voters in close proximity who were able to observe how other members were voting their ballots. Thus, the Local failed to observe secrecy of the ballot as required by Section 401 (c) of the Act. Since the margin of victory by Kluz over

Bachowski was 18, 18 votes may have been affected by the existence of this violation.

(16) *Local Union 15370*

This Local Union failed to provide adequate safeguards to insure a fair election in that the ballot control was less than desirable. Persons not authorized handled ballots at one or more times throughout the period of the election. Although additional investigation failed to disclose any evidence that would indicate other irregularities such as fraud or ineligible members voting, it was nevertheless concluded that this lack of adequate safeguards may have affected ten members in this local—the margin of votes achieved by Kluz over Bachowski.

(17) *Local Union 15420*

Evidence disclosed that this Local Union failed to maintain adequate safeguards to insure a fair election. Union records indicated that Kluz received 15 votes, Bachowski none, and Brummitt one. However, the Secretary's investigation revealed that only 13 members were listed as voting. It was also learned that this local did not maintain adequate control of the ballots a fact which may in no small part account for the deviation between the number of votes indicated as having been cast and the number of members actually voting. Thus, the Secretary of Labor concluded that all 16 members voting in this election may have been affected by the local's failure to provide adequate safeguards to insure a fair election.

To recapitulate, we are setting forth below a list of the Locals in which violations occurred and the votes which may potentially have been calculated to a theoretical probability and represent the maximum number of votes involved.

1. Local Union 2203 — 10 votes
2. Local Union 2789 —249 votes
3. Local Union 3186 — 16 votes
4. Local Union 3713 —124 votes
5. Local Union 7496 — 6 votes
6. Local Union 7749 — 25 votes
7. Local Union 12055— 51 votes
8. Local Union 12059— 8 votes
9. Local Union 13972— 5 votes
10. Local Union 14210— 2 votes
11. Local Union 14661— 14 votes
12. Local Union 14768— 17 votes
13. Local Union 14800—250 votes
14. Local Union 14820— 63 votes
15. Local Union 14945— 18 votes
16. Local Union 15370— 10 votes
17. Local Union 15420— 16 votes

By adding the total of the votes set forth in the local unions above, the election for the position of District Director, District 20, may theoretically have been affected by violations disclosed through investigation to the extent of 884 votes. Since the margin of victory by which Mr. Kluz prevailed over Mr. Bachowski was 907 votes[2] it was the Secretary of Labor's conclusion that the violations which occurred could not have affected the outcome of the election. Moreover, we would note the Secretary like any other litigant must be cognizant of all factors entering into prosecution of a Title IV case. In this regard, the union has raised serious question concerning Bachowski's invocation of his internal union remedies, notably his failure to carry a complaint to the

[2] The results in the election for the position of District Director, District 20 were as follows: Kluz—10,558 votes; Bachowski—9,651 votes; Brummitt—3,566 votes.

International Tellers whose function is to rule initially upon the validity of election protests. Mr. Bachowski chose to bypass this step and to carry his protest directly to the Executive Board.

The plaintiff has correctly alleged in this complaint and the Secretary has confirmed through investigation, that certain violations of Title IV occurred in the election for District Director for District 20. However, the Secretary concluded, after review of the investigative findings that the votes which may have been affected by the violations could not have altered the outcome of the election. In *Wirtz* v. *Local 153, Glass Bottle Blowers Association*, 389 U. S. 463 (1968) the Supreme Court noted at page [472] that:

> The Secretary may not initiate an action until his own investigation confirms that a violation of section 401 *probably infected* the challenged election. (Emphasis added.)

Thus, the finding of violations by the Secretary of Labor does not mature into an actionable case unless he has evidence that such violations "probably infected" the election in question. In this case, the Secretary found violations, but concluded that they did not affect the outcome of the election.

## CONCLUSION

The extensive investigation conducted by the Department of Labor focused, among other things, on all the specific matters raised by Mr. Bachowski. As has been shown above, certain violations were disclosed in the conduct of this election, however, these violations could not have affected its outcome. Therefore, it is submitted that the Secretary of Labor in arriving at his determination not to file suit to set aside the District 20 election

properly discharged his statutory duties under Title IV of the Act.

/s/ Richard L. Thornberg
Assistant United States Attorney

WILLIAM J. KILBERG
Solicitor of Labor

BEATE BLOCH
Associate Solicitor

LOUIS WEINER
Regional Solicitor

STEPHEN ERNST
ROBERT K. SALYERS
Attorneys

U. S. Department of Labor
of Counsel

Filed: November 11, 1974.

MR. CHIEF JUSTICE BURGER, concurring.

I join the opinion of the Court with the understanding that the Court has fashioned an exceedingly narrow scope of review of the Secretary's determination not to bring an action on behalf of a complainant to set aside an election. The language and purposes of § 401 of the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 532, 29 U. S. C. § 481, have required the Court to define a scope of review much narrower than applies under 5 U. S. C. § 706 (2)(A) in most other administrative areas. The Court's holding must be read as providing that the determination of the Secretary not to challenge a union election may be held arbitrary and capricious only where the Secretary's investigation, as evidenced by his statement of reasons, shows election ir-

regularities that affected its outcome as to the complainant, *Wirtz* v. *Bottle Blowers Assn.*, 389 U. S. 463, 472 (1968), and that notwithstanding the illegal conduct so found the Secretary nevertheless refuses to bring an action and advances no rational reason for his decision.

MR. JUSTICE REHNQUIST, concurring in the result in part and dissenting in part.

The parties to this case will have to be excused if they react with surprise to the opinion of the Court. Instead of deciding the issue presented in the Secretary of Labor's petition for certiorari, the Court decides an issue about which the parties no longer disagree; to compound the confusion, the reasoning adopted by the Court to resolve the issue it does decide is quite unusual unless it is intended to foreshadow disposition of the issue upon which the Court purports to reserve judgment.

I

After exhausting intraunion remedies, respondent filed a complaint with the Secretary of Labor alleging violations of § 401 of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 73 Stat. 532, 29 U. S. C. § 481. The Secretary conducted an investigation and concluded that no civil action to set aside the challenged election was warranted. Respondent was so notified,* and he then sought to challenge the Secretary's

---

*Respondent was notified by telephone that the Secretary had decided not to file suit to set aside the election. App. 5A. On the day respondent filed his complaint, the Labor Department sent him a letter notifying him of the Secretary's decision in the following manner:

"Pursuant to Sections 402 and 601 of the Act, an investigation was conducted by this Office. Based on the investigative findings, it has been determined, after consultation with the Solicitor of

refusal to file suit. The complaint alleged that the Secretary had refused to file suit, "[n]otwithstanding the fact that the Defendant Secretary's investigation has substantiated the [respondent's] allegations," and that respondent "has not been given a statement of reasons why the Defendant Secretary will not file suit." App. 5A. Respondent asked the court to order the Secretary to file suit to set aside the election and "direct the Defendant Secretary to make available for examination by the [respondent] all evidence it has obtained concerning its investigation of the aforesaid election." *Id.*, at 6A. The Court of Appeals, reversing the District Court, held that the Secretary's refusal to file an action to set aside the election was judicially reviewable. In considering "the proper scope of such judicial review," the Court of Appeals concluded that the Secretary should prepare a statement of reasons, presumably to assist in judicial review and also to ensure that proper deference was paid to the Secretary's determinations. 502 F. 2d 79, 88–89 (CA3 1974).

Notwithstanding contrary verbiage, the approach of this Court is not materially different. The Court expressly reserves "the question whether the district court is empowered to order the Secretary to bring a civil suit against the union to set aside the election," *ante,* at 575, but its justification for ordering the Secretary to provide a statement of reasons appears premised upon an affirmative disposition of the reserved question: the Secretary must provide a statement of reasons "to enable the reviewing court intelligently to review the Secretary's determination," *ante,* at 571. I cannot subscribe to judicial reasoning of this convoluted sort.

---

Labor, that civil action to set aside the challenged election is not warranted. We are, therefore, closing our file in this case as of this date." Brief for Respondent 1a.

## II

In the first place, whether or not a statement of reasons must be supplied by the Secretary is not an issue presented by this case. The single question presented by the Secretary's petition for certiorari is:

"Whether a disappointed union office seeker may invoke the judicial process to compel the Secretary of Labor to bring an action under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 to set aside a union election." Pet. for Cert. 2.

The Secretary did not seek review of the holding by the Court of Appeals that a statement of reasons was required but instead proceeded to comply with that portion of the appellate court's holding by filing the statement of reasons that is appended to the opinion of the Court. As the Secretary states: "We do not contest this portion of the court's holding." Brief for Petitioner 5 n. 2.

Such a concession appears well founded, although not for the reasons stated by the Court. Independent of any connection with judicial review, a statement of reasons is required by statute. The Administrative Procedure Act (APA), which is applicable to the LMRDA, 29 U. S. C. § 526, states:

"Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceedings. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial." 5 U. S. C. § 555 (e).

See S. Doc. No. 248, 79th Cong., 2d Sess., 206, 265 (1946). Here, where the Secretary is charged with the

responsibility of enforcing the rights of individual union members and has established a procedure for the filing of a complaint with him by such members, § 555 (e) would appear to be applicable.

The acquiescence of the Secretary has removed this issue from the case. Since the majority persists in deciding it, I concur in the result on the basis of the APA, which is not dependent upon the availability of judicial review. This ground, in my view, furnishes a sounder reason for concluding that a statement of reasons must be furnished than does the reasoning of the Court.

## III

It remains to consider the only question presented by the Secretary's petition for certiorari: Is judicial review available at the behest of respondent to force the Secretary to file a civil action to set aside the union election?

Respondent does not rely upon any provision of the LMRDA as authorizing this post-election lawsuit, for indeed there is none. Instead, respondent relies upon the APA judicial-review provisions, 5 U. S. C. §§ 701–706. App. 3A. The judicial-review provisions of the APA do not apply, however, "to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U. S. C. § 701 (a).

I agree with the Court that 29 U. S. C. § 483 does not preclude judicial review of the kind sought in this case. That section expresses the congressional judgment that the civil action filed by the Secretary under 29 U. S. C. § 482 (b) shall be the exclusive remedy "for challenging an election already conducted." Respondent recognizes that this Court's decision in *Calhoon* v. *Harvey,* 379 U. S. 134 (1964), precludes him from proceeding directly

against the union, a result that I believe is compelled by § 483. But § 483 is silent about the availability of relief to force the Secretary to pursue the remedy that is exclusively his, and under this Court's decisions a prohibition of judicial review is not to be lightly inferred. *Abbott Laboratories* v. *Gardner,* 387 U. S. 136, 140–141 (1967).

I reach a contrary conclusion, however, with regard to the second clause of § 701 (a). It seems to me that prior decisions of this Court establish that the Secretary's decision to file or not to file a complaint under § 482 is precisely the kind of "agency action . . . committed to agency discretion by law" exempted from the judicial-review provisions of the APA.

In LMRDA cases, this Court has repeatedly recognized the exclusive role in post-election challenges played by the Secretary. In *Calhoon* v. *Harvey, supra,* at 140–141 (footnote omitted), we said:

> "Section 402 of Title IV, as has been pointed out, sets up an exclusive method for protecting Title IV rights, by permitting an individual member to file a complaint with the Secretary of Labor challenging the validity of any election because of violations of Title IV. Upon complaint the Secretary investigates and if he finds probable cause to believe that Title IV has been violated, he may file suit in the appropriate district court. It is apparent that Congress decided to utilize the *special knowledge and discretion* of the Secretary of Labor in order best to serve the public interest. . . . In so doing Congress, with one exception not here relevant, decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV. *Reliance on the discretion of the Secretary* is in harmony with the general congressional policy to allow

unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts. Without setting out the lengthy legislative history which preceded the passage of this measure, it is sufficient to say that we are satisfied that the Act itself shows clearly by its structure and language that the disputes here, basically relating as they do to eligibility of candidates for office, fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set out in that Title." (Emphasis added.)

See also *Wirtz* v. *Bottle Blowers Assn.*, 389 U. S. 463, 473-474 (1968). More recently, in *Trbovich* v. *Mine Workers*, 404 U. S. 528 (1972), we said, in the context of claims presented by an intervenor that had not been included in the Secretary's complaint:

"With respect to litigation by union members, then, the legislative history supports the conclusion that Congress intended to prevent members from pressing claims *not thought meritorious by the Secretary*, and from litigating in forums or at times different from those chosen by the Secretary. . . .

. . . . .

". . . [W]e think Congress intended to insulate the union from *any complaint that did not appear meritorious to both a complaining member and the Secretary*. Accordingly, we hold that in a post-election enforcement suit, Title IV imposes no bar to intervention by a union member, so long as that intervention is limited to the claims of illegality presented by the Secretary's complaint." *Id.*, at 536–537 (footnote omitted; emphasis added).

The exclusivity of the Secretary's role in the enforcement of Title IV rights is no accident. It represents a conscious legislative compromise adopted to balance two important but conflicting interests: vindication of the rights of union members and freedom of unions from undue harassment. See *Bottle Blowers, supra,* at 470–471. This Court has recognized unreviewable discretion both in the labor area, *Vaca* v. *Sipes,* 386 U. S. 171, 182 (1967), and in other civil areas, *The Confiscation Cases,* 7 Wall. 454 (1869); *FTC* v. *Klesner,* 280 U. S. 19, 25 (1929). The Court of Appeals sought to distinguish this line of cases on the grounds that it involved "vindication of societal or governmental interest, rather than the protection of individual rights," 502 F. 2d, at 87. While the Secretary points out the artificiality of this purported distinction and refutes it as applied to these cases, Brief for Petitioner 30, a more basic response is that such considerations provide no basis for contravention of legislative intent:

> "Congress for reasons of its own decided upon the method for the protection of the 'right' which it created. It selected the precise machinery and fashioned the tool which it deemed suited to that end. . . . All constitutional questions aside, it is for Congress to determine how the rights which it creates shall be enforced." *Switchmen's Union* v. *National Mediation Board,* 320 U. S. 297, 301 (1943).

The Court recognizes the power of these arguments, if only by understatement, when it acknowledges that any argument for judicial review of the Secretary's determination "obviously presents some difficulty in light of the strong evidence that Congress deliberately gave exclusive enforcement authority to the Secretary." *Ante,* at 575 (footnote omitted). In my view the parties to this

litigation are entitled to adjudication of the issue upon which this Court granted certiorari. I would accordingly reverse the judgment of the Court of Appeals insofar as it held that the Secretary's refusal to institute an action under 29 U. S. C. § 482 is judicially reviewable under the provisions of the APA, 5 U. S. C. §§ 701–706.