**Walter BACHOWSKI, Plaintiff,**

**v.**

**Peter BRENNAN, Secretary of Labor, United States Department of Labor, and United Steelworkers of America, Defendants.**

**Civ. A. No. 73–0954.**

United States District Court,
W. D. Pennsylvania

Dec. 19, 1975.

Kenneth Y. Jablonski, Washington, Pa., for plaintiff.

James D. English, Pittsburgh, Pa., Beate Bloch, Associate Sol., U. S. Dept. of Labor, Washington, D. C., Stephen Ernst, Philadelphia, Pa., Robert Weinberg, Bredhoff, Cushman, Gottesman & Cohen, Joseph L. Rauh, Jr., Washington, D. C., for defendants.

## OPINION

DUMBAULD, District Judge.

In response to revelations regarding unsavory practices in the management of labor unions, Congress enacted the "Labor-Management Reporting and Disclosure Act of 1959",[1] commonly known as LMRDA or the Landrum-Griffin Act, to purify the process of collective bargaining by ensuring that unions were genuinely representative of the interests of their membership, and not exploited for the private advantage of corrupt labor tycoons. The original bill dealing with this subject was introduced on January 20, 1959, by Senator John F. Kennedy to "protect workers, employers, honest unions, and the general public from the unscrupulous or dictatorial tactics of the few rackateers."[2] Even in this first draft of the legislation there was contained a provision practically identical with Section 402 as enacted (29 U.S.C.A. § 482) providing for enforcement of the statutory provisions to ensure honest democratic elections by means of a suit brought by the Secretary of Labor, and a new election under his supervision if violations are proved.[3]

The House passed a bill authorizing suit by individual union members rather than by the Secretary.[4] In conference the Senate version was accepted.[5]

Section 402 of Title IV of the Act (73 Stat. 534, 29 U.S.C.A. § 482) provides:

Sec. 402(a) A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 401 (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this title has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this title and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization.

1. Act of September 14, 1959, 73 Stat. 519, 29 U.S.C.A. § 401 *et seq.* The Kennedy-Ervine Bill, S. 1555, was passed by the Senate on April 25, 1959. Legislative History of the Labor-Management Reporting and Disclosure Act of 1959 (1959) II, 1257. The House on August 14, 1959, struck out all but the enacting clause of S. 1555 and substituted the Landrum-Griffin Bill, H.R. 8342, passed by the House, and requested a conference. Legislative History, II, 1702.

2. Legislative History, II, 968.

3. Sec. 302 of Title III of S. 505, Legislative History, I, 62–64; II, 969.

4. Sec. 402 of H.R. 8490, and of H.R. 8342, Legislative History, I, 907; II, 1697.

5. 86th Cong., 1st Sess., H.Rept.No.1147, 35; Legislative History, I, 939, 1359. See also *Trbovich v. U. M. W. A.,* 404 U.S. 528, 533–35, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).

(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

(1) that an election has not been held within the time prescribed by section 401, or

(2) that the violation of section 401 may have affected the outcome of an election,

the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization. If the proceeding is for the removal of officers pursuant to subsection (h) of section 401, the Secretary shall certify the results of the vote and the court shall enter a decree declaring whether such persons have been removed as officers of the labor organization.

(d) An order directing an election, dismissing a complaint, or designating elected officers of a labor organization shall be appealable in the same manner as the final judgment in a civil action, but an order directing an election shall not be stayed pending appeal.[6]

Subsequent decisions by the Supreme Court interpreting the Act established that the remedy of suit by the Secretary is exclusive with respect to claims of violation after an election has been held, and that individual union members have no standing to sue in their own right.[7] They may intervene in a suit brought by the Secretary but may not expand the scope of the issues involved by introducing new questions.[8] Apparently the Secretary himself may broaden the issues if his investigation unearths additional violations.[9]

With these principles in mind, this Court summarily dismissed plaintiff's instant suit to compel the Secretary to bring an action which the Secretary had decided, after complaint and investigation, not to bring.

This Court was convinced that it had no more business to order the Secretary to file suit than it had to order Special Prosecutor Leon Jaworski to indict Richard Milhous Nixon for Watergate transgressions, or to direct President Ford whether he should or should not appoint a particular individual as a Justice of the Supreme Court to fill a vacancy on that tribunal.

The subsequent course of the litigation (in which this Court's decision was reversed by the Court of Appeals,[10] and the Court of Appeals decision was reversed by the Supreme Court)[11] disclosed

---

**6.** Sec. 403 (29 U.S.C.A. § 483) adds that: "Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this title. The remedy provided by this title for challenging an election already conducted shall be exclusive."

**7.** *Wirtz v. Glass Bottle Blowers,* 389 U.S. 463, 473, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968); *Calhoon v. Harvey,* 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

**8.** *Trbovich v. U. M. W. A.,* 404 U.S. 528, 537, 92 S.Ct. 630, 635, 30 L.Ed.2d 686 (1972): "Congress intended to insulate the union from

any complaint that did not appear meritorious to both a complaining member and the Secretary."

**9.** *Wirtz v. Local No. 125,* 389 U.S. 477, 482, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968). However, in *Hodgson v. Steelworkers,* 403 U.S. 333, 336–41, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971), it was held that if the complaining member knew of but did not complain about a particular violation the Secretary could not include that topic as an issue in the suit.

**10.** *Bachowski v. Brennan,* 502 F.2d 79 (C.A.3, 1974).

**11.** *Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975).

that this simple-minded [12] view was too simplistic.

The Court of Appeals relied chiefly on the Administrative Procedure Act (APA),[13] a legislative landmark enacted in 1946 after much endeavor on the part of the American Bar Association, to allay the spectre of "the rise of administrative absolutism" which haunted Dean Roscoe Pound during the later years of his life.[14]

Section 10(a) of the APA provided that "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion . . . [a]ny person . . . adversely affected . . . by [agency] action . . . shall be entitled to judicial review thereof." [15] Section 10(c) proclaimed that "every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review." [16] The scope of such review is specified in Section 10(e).[17]

"Agency" is defined as "each authority . . . of the Government of the United States other than Congress, the courts, or the governments of the possessions, Territories, or the District of Columbia." [18]

No doubt the Secretary of Labor's decision not to bring suit to seek a new union election was an act done by authority of the United States government; and one that adversely affected the members who hoped for better results if a new election were held. But there remained the question whether the matter was "by law committed to agency discretion." [19]

Construing these words in accordance with notions of public policy, the Court of Appeals held that judicial review of the Secretary's decision not to bring suit "should extend at the very least to an inquiry into his reasons for that decision to ensure that he has not abused the discretion granted him . . . . [P]laintiff is entitled to a sufficiently specific statement of the factors upon which the Secretary relied in reaching his decision not to file suit so that plaintiff may have information concerning the allegations contained in his complaint." 502 F.2d at 89–90.[20]

In pursuance of the mandate of the Court of Appeals this Court entered an order requiring the Secretary "to furnish a statement of reasons." [21]

12. Justice Jackson's philosophy that liquor cases should be resolved under the liquor clauses of the Constitution rather than the Commerce Clause [*Duckworth v. Arkansas,* 314 U.S. 390, 398, 62 S.Ct. 311, 86 L.Ed. 294 (1941)] would indicate that labor election cases should be determined by interpretation of the labor statutes rather than of statutes primarily designed to govern administrative regulation of public utilities and the like.

13. Act of June 11, 1946, 60 Stat. 237; recodified by Act of September 6, 1966, 80 Stat. 378, 5 U.S.C.A. § 551 *et seq.*

14. See Pound, "The Place of the Judiciary in a Democratic Polity", 27 A.B.A.J. 133 (March, 1941); Pound, *Administrative Law* (1942) 7, 20–23, 28, 36, 43, 74, 83–84, and other writings.

15. Sec. 10(a), 60 Stat. 243, now 5 U.S.C. §§ 701, 702.

16. Sec. 10(c), 60 Stat. 243, now 5 U.S.C. § 704.

17. Sec. 10(e), 60 Stat. 243–44, now 5 U.S.C. § 706.

18. Section 2(a), 60 Stat. 237, now 5 U.S.C. § 551.

19. This language is pretty much a *renvoi* to the intent of Congress expressed in the terms of the labor statute. See note 12, *supra.* 5 U.S.C. § 701 itself is about as meaningful as the Tenth Amendment's declaration that powers not granted are reserved. This sheds little light on the crucial question whether or not a particular power has been granted (*lege* "committed to agency discretion").

20. The Supreme Court found that "The opinion of the Court of Appeals authorized review beyond the permissible limits defined in this opinion . . . [It] impermissibly authorized the District Court to allow respondent the full trappings of an adversary trial of his challenge to the factual basis for the Secretary's decision." 421 U.S. at 576–77, 95 S.Ct. at 1862.

21. That such an order was made is established by the Supreme Court's *ipse dixit* (421 U.S. at 577, 95 S.Ct. 1851) and confirmed by the District Court's memory, although by reason of

In pursuance of this order, the Secretary filed a statement, which appears as an appendix to the Supreme Court opinion, at 421 U.S. 578–90, 95 S.Ct. 1851.

The Supreme Court on June 2, 1975, reversing the Court of Appeals said:

"We hold . . . that the Court of Appeals erred insofar as its opinion construes [5 U.S.C.] § 706(2)(A) to authorize a trial-type inquiry into the factual bases of the Secretary's conclusion that no violations occurred affecting the outcome of the election." 421 U.S. at 566, 95 S.Ct. at 1857.

The Supreme Court detected in LMRDA "a congressional purpose narrowly to limit the scope of judicial review of the Secretary's decision." 421 U.S. at 568, 95 S.Ct. at 1858.

The Court concluded that (1): "clearly the reviewing court is not authorized to substitute its judgment for the decision of the Secretary not to bring suit; (2) therefore to enable the reviewing court intelligently to review the Secretary's determination, the Secretary must provide the court and the complaining witness with copies of a statement of reasons supporting his determination." 421 U.S. at 571, 95 S.Ct. at 1860.

The Court went on to say that "Except in what must be the rare case,[22] the court's review should be confined to examination of the reasons statement, and the determination whether the statement without more evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious. . . . [The] statement of reasons must be adequate to enable the court to determine whether the Secretary's decision was reached for an impermissible reason or for no reason at all." Hence it "should inform the court and the complaining union member [of] both the grounds of decision and the essential facts upon which the Secretary's inferences are based." 421 U.S. at 572–74, 95 S.Ct. at 1860–1861.

As to remedy, the Court did not decide whether the District Court has power to compel the Secretary to file suit. That question "obviously presents some difficulty in light of the strong evidence that Congress deliberately gave exclusive enforcement authority to the Secretary." 421 U.S. at 575, 95 S.Ct. at 1862.[23]

The Court held that: "When the District Court determines that the Secretary's statement of reasons adequately demonstrates that his decision not to sue is not contrary to law, the complaining union member's suit fails and should be dismissed."[24] 421 U.S. at 574, 95 S.Ct. at 1861.

In conclusion the Court points out that:

the "diminution of the record" referred to hereinafter, no copy of a signed order can be found. The terms of the order were intended to "track" [to use a locution which Nero Wolfe would not tolerate] the opinion of the Court of Appeals. The precise terms of the order are immaterial since the Secretary without contest filed a statement and indicated at the hearing on November 19, 1975, as set forth hereinafter, his willingness to stand upon the statement so filed (which is printed in 421 U.S. at 578–590, 95 S.Ct. 1851).

**22.** The Court emphasized (perhaps with Watergate revelations in mind) that in such a case "a matter of grave public concern" would be involved, and "we may hope that such cases would be rare indeed." 421 U.S. at 574, 95 S.Ct. at 1861.

**23.** Justice Rehnquist in dissent observes that the Court's "justification for ordering the Sec-

retary to provide a statement of reasons appears premised upon an affirmative disposition of the reserved question." 421 U.S. at 592, 95 S.Ct. at 1869. He also points out that the question not decided by the Court is the only issue presented by the petition for certiorari and that the question decided by the Court was moot, by reason of the Secretary's concession and issuance of a statement. *Ibid.*, 593, 95 S.Ct. 1851.

**24.** The Court added that "Where the statement inadequately discloses his reasons, the Secretary may be afforded opportunity to supplement his statement", with a caution against permitting "endless litigation" where Congress wanted "expeditious resolution of post-election disputes." 421 U.S. at 574–75, 95 S.Ct. at 1861.

"The District Court, pursuant to the Court of Appeals' order of remand, ordered the Secretary to furnish a statement of reasons. . . . The Secretary furnished the statement and it is attached as an Appendix to this opinion. *Its* adequacy to support a conclusion whether the Secretary's decision was rationally based or was arbitrary and capricious, is a matter of initial determination by the District Court." 421 U.S. at 577, 95 S.Ct. at 1862 [Italics supplied].

In response to this decision, the Court of Appeals on June 14, 1975, made the following order:

> After consideration of the grant of a petition for a writ of certiorari by the Supreme Court of the United States in the above matter on December 16, 1974, *sub nom. Brennan, Secretary of Labor, Petitioner v. Bachowski,* 419 U.S. 1068, 95 S.Ct. 654, 42 L.Ed.2d 663 (1974), and the opinion and order filed by the Supreme Court of the United States on June 2, 1975, *sub nom. Dunlop, Secretary of Labor v. Bachowski,* remanding the above case to this court "to enter a new order that the proceedings on remand be consistent with this opinion of this Court," 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377.
>
> It is ORDERED that the judgment of this court dated July 26, 1974, is vacated; the judgment of the United States District Court for the Western District of Pennsylvania entered November 12, 1973, is vacated; and the cause will be remanded for further proceedings consistent with the above-mentioned June 2, 1975, opinion of the Supreme Court of the United States. No costs.

Thereafter, plaintiff filed a "Verified Motion for Further Proceedings and for Further Relief on Demand", briefs were filed, and a hearing held on November 19, 1975.

It was stipulated at the hearing that the Secretary's statement as printed in 421 U.S. at 578–90, 95 S.Ct. 1851 should be treated and deemed to be the Secretary's statement of reasons as required by the Supreme Court's opinion [even though it was not signed by the Secretary but by counsel, cf. *U. S. v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); and even though it had been made pursuant to this Court's order pursuant to the mandate of the Court of Appeals, and under the supposition that the decision of the Court of Appeals was in all respects valid (subject to the outcome of the appeal) and hence might have been tailored in response to the requirements laid down by the Court of Appeals rather than those laid down by the Supreme Court]. Counsel for the Secretary waived the "opportunity to supplement his statement" [421 U.S. at 574, 95 S.Ct. 1851] at that stage of the case; and counsel also stipulated that notwithstanding the "diminution of the record" [*i. e.* its total loss] somewhere during the appellate process, the "reconstituted" record supplied by the parties from their files was adequate and sufficient for present purposes, and that this Court might proceed as a court "possessed of the record."

After these formalities, plaintiff attacked the Secretary's statement upon various grounds, which will now be discussed.

Plaintiff's most far-reaching contention is that this is one of the "rare" cases [25] where the Secretary's action is "plainly beyond the bounds of the Act" [421 U.S. at 574, 95 S.Ct. at 1861] possibly entitling plaintiff to the "full trappings of adversary trial type hearings" [*Ibid.* at 573, 95 S.Ct. at 1860] contrary to the normal scope of judicial review prescribed in the Supreme Court's opinion.

That plaintiff seeks a "trial-type" hearing is obvious from his demand for production of specified documents, and the opportunity to prove that the reasons set forth in the Statement are not the "real" (but only the "good"?) reasons why the decision was made; that the

**25.** See note 22, *supra.*

Philadelphia office recommended bringing suit but Washington decided differently;[26] that the Labor Department plays "footsie" with the labor establishment to the disadvantage of "rebels" such as plaintiff; that this decision was made by William J. Kilberg, Solicitor of Labor (the Secretary having recused himself) and that plaintiff should be permitted to take the testimony of Kilberg on oath as to the reasons for the decision.

 Even if all these allegations were in fact true, they could not be proved without a "trial-type" proceeding, and unless the order on its face is plainly questionable we cannot enter into ascertainment of such types of defect. Mere error or difference of opinion does not amount to flagrant defiance of the Act or *ultra vires* action.

 Plaintiff next contends that the Statement is arbitrary on its face. This is a contention which this Court is clearly authorized and directed to examine by the Supreme Court's opinion.

 We analogize the type of review thus prescribed to the inquiry arising upon a demurrer at common law, or to determine the sufficiency of evidence to go to a jury. In other words our review is to be "confined to examination of the reasons statement" itself, without more; that is to say without any inquiry into the truthfulness *vel non* of the contents of the statement, or any inquiry into extraneous issues which the Secretary might have discussed if he had been so minded but did not. If the statement by its own terms is so intrinsically or inherently irrational as to be arbitrary

and capricious, this Court shall so declare. In that event we assume, as does the Supreme Court, that the Secretary would then "proceed appropriately" to remedy the situation thus disclosed.[27]

We now proceed, therefore, to examination of the Statement.

The statement discloses that all leads furnished by Bachowski were investigated, as well as other suspicious circumstances, 421 U.S. at 579, 95 S.Ct. 1851. Usually the whole infected vote is given to Bachowski. *Ibid.,* at 580–81, 95 S.Ct. 1851. However, in items 3, 4, 14, 15, and 16 (*ibid.,* 588, 95 S.Ct. 1851) only the *margin* of Bachowski's defeat is used, rather than the total vote not received by Bachowski.

The Court does not perceive why this method of counting is used in these instances. Perhaps there may be a reason for it.

 However, without further illumination, we are constrained to hold that "the statement inadequately discloses his reasons", and that the Secretary should "be afforded opportunity to supplement his statement."

## ORDER

And now, this 19 day of December, 1975, for the reasons set forth in the foregoing opinion,

It is ordered that the Secretary of Labor be given until February 1, 1976, to file with the Court a supplemental statement of reasons, which shall cover, but need not be limited to, the points abovementioned in the Court's opinion.

---

**26.** It is long-settled law that recommendations of subordinates or dissenting views are not binding and do not detract from the validity of the decision actually made. *B. & O. Ry. Co. v. U. S.,* 298 U.S. 349, 362, 56 S.Ct. 797, 80 L.Ed. 1209 (1936); *Federal Radio Commission v. Nelson,* 289 U.S. 266, 285–86, 53 S.Ct. 627, 77 L.Ed. 1166 (1933).

**27.** We do not forget that in case of the "inadequate disclosure" (as distinguished from the "insufficiency") of the Secretary's reasons, he should be given opportunity to supplement his statement. *Ibid.,* at 574, 95 S.Ct. 1851.