Walter **BACHOWSKI**, Plaintiff,

v.

Peter **BRENNAN** [now John T. Dunlop], Secretary of Labor

and

United Steel Workers of America, Defendants.

Civ. A. No. 73–0954.

United States District Court, W. D. Pennsylvania.

May 7, 1976.

Kenneth J. Yablonski and Joseph L. Rauh, Washington, D. C., for plaintiff.

James D. English, Beate Bloch, Associate Solicitor, U. S. Dept. of Labor, Washington, D. C., Stephen Ernst, Philadelphia, Pa., Robert Weinberg, Bredhoff, Cushman, Gottesman & Cohen, Washington, D. C., for defendants.

## OPINION

DUMBAULD, District Judge.

The Secretary of Labor filed on March 30, 1976, the Supplemental Statement called for by this Court's opinion in *Bachowski v.*

*Brennan,* 405 F.Supp. 1227, 1234 (W.D.Pa. 1975), particularly inviting explanation why only the *margin* of plaintiff's opponent's vote was used in some cases,[1] rather than the total infected vote. Counsel have now commented on the Supplemental Statement in additional briefs invited by the Court.

There is now full disclosure of the Secretary's reasons; it remains only to assess their sufficiency (see 405 F.Supp. at 1234, n. 27).

The gist of his reasoning appears in the following passage:

> The first . . . method computed impact within a particular local as the margin of votes between Bachowski and Kluz when there was a violation in which it was impossible to determine effect with any certainty. Violations of secrecy of the ballot or of inadequate safeguards are within this category.
>
> With this type of violation it is impossible to prove one way or the other if any voters were actually intimidated by such violations. On one end of the spectrum, to assume that only those who voted for Kluz were effected is unrealistic. The violations which occurred may have tainted or affected votes of not only Kluz but other candidates as well. Similarly to assume that everyone who would have voted, but for the violations, would have voted for Bachowski is also unfair. The Secretary therefore used a middle ground in estimating the effect on outcome. Kluz's margin of victory over Bachowski was taken from Kluz in any local in which the integrity of the balloting was compromised by inadequate procedural safeguards, thus disallowing Kluz any advantage in the tainted local. As an ex-

ample, if Bachowski had received two votes . . . and Kluz five, the Secretary disregarded the 3-vote margin and, in effect, credited Bachowski and Kluz each with two votes; that is, put them on an equal footing and made it appear as if the election had never taken place in that local . . . .

> The second method . . . was to credit Bachowski with all votes when the impact on such votes was directly affected by a violation and the number of such votes could be measured with some certainty. For example, when a union failed to hold an election, failed to notify members of the election or failed to report the results, Bachowski was credited with all votes. Thus, in Item 2 of the Secretary's initial Statement, no election was held in Local 2789. The total membership of that local is 249 and in estimating effect, the maximum number of possible votes was credited to Bachowski. It was further assumed that all of those 249 voters would have voted in the election, even though there is rarely 100 percent participation in elections of this kind. Nevertheless it was assumed that 249 members were potentially denied the right to vote, all would have voted and all would have voted for Bachowski. (pp. 3–5 of Supplemental Statement).

The essence of the Secretary's method of determining the maximum impact or effect of violations upon outcome is to distinguish between cases where the number of votes affected can be ascertained with some certainty, and cases where it can not.

In the former situation, the Secretary credits Bachowski with the whole vote in that voting unit. In the latter, he elimi-

---

1. These are items 3, 4, 11, 15, and 16 of the Secretary's original statement, appearing at 421 U.S. 578–90, 95 S.Ct. at 1863–1868, 44 L.Ed.2d at 392–399. The Supplemental Statement (note 1, p. 3) points out that item 11 used the margin method, (though this Court's opinion said "14" rather than "11"). This is demonstrably merely a typographical error. Examination of the advance sheets used in preparing our former opinion shows item 11 underlined in red pencil both at 421 U.S. 584 and

at *ibid.,* 588, 95 S.Ct. at 1865, 1867, 44 L.Ed.2d at 395, 398. We invoke therefore the language of Justice Robert H. Jackson in *U. S. v. Bryan,* 339 U.S. 323, 346, 70 S.Ct. 724, 737, 94 L.Ed. 884, 898 (1950), that "it is embarrassing to confess a blunder;" rather than his more elaborate effort in *McGrath v. Kristensen,* 340 U.S. 162, 176–78, 71 S.Ct. 224, 232–33, 95 L.Ed. 173, 182 (1950), to explain why an opinion he had previously signed as Attorney General was now felt to be erroneous.

nates the winner's margin of victory, and treats the result as if the winner and the challenger had obtained an equal number of votes; in other words "as if the election had never taken place in that local."

As illustrations of the former situation, the Secretary enumerates failure to hold the election or to notify members of the election or failure to report the results of the voting. As examples of the latter situation, the Secretary gives violations of secrecy of the voting and inadequate safeguards [to ensure secrecy, an honest count, and the like]. The Secretary believes that the methods used give the complainant "the maximum benefit for which there is a reasonable probability" (p. 8 of Supplemental Statement).

■ The Secretary's task in ascertaining whether violations may have affected the outcome of a union election is two-fold: to ensure a fair and honest election which genuinely expresses the will of the voters, and to interfere as little as possible with the normal lawful functioning of union machinery. If there is no probability that the outcome of the election was affected by violations, the election should be allowed to stand.

■ Congress intended to protect the genuine expression of the will of the voters by requiring secrecy and other safeguards (29 U.S.C. § 481).

■ The requirement of secrecy would seem to include not only the right to vote in secret (without "kibitzers" or observation how a voter marks his ballot) but also the right to secrecy *after the ballots are cast.* Any post-voting device by which it can be determined how a particular voter voted would be a violation of secrecy (such as signatures or other identifying marks on the ballot, or extracting each ballot from the ballot box and examining it immediately after it has been cast).

■ By imposing the requirement of secrecy Congress meant to eliminate any form of potential coercion or intimidation which might occur if it could be learned in any manner how an individual voter had voted.

■ Any violation of the right to secrecy either at the time of voting or by subsequent procedures of handling the ballots constitutes a substantive and material infringement of the voter's rights, and also of the candidates' rights to a fair and honest competition for the suffrages of the union members.

As plaintiff's counsel points out "secrecy and safeguards are for the benefit of the challenger and the absence of secrecy and safeguards can *only* benefit the incumbent who controls the machinery of the union and can affect votes through fear or hope of favor" (p. 2 of brief).

Such substantive violations of a type which may *affect how a voter votes* are to be distinguished from merely technical violations of a procedural character. For example if "ballots were handed out by an unauthorized individual rather than official election tellers" (Supplemental Statement, p. 6), but such *de facto* election officers could not observe how the voters voted or subsequently learn how they had voted, the violation would be technical and of little or no importance in affecting the outcome.

■ But it appears contrary to the intent of Congress, and indeed irrational, to consider as technical violations those which affect secrecy of the ballot and potentially may influence or affect *how a voter votes.* These are vital and substantive infringements of the Congressionally guaranteed right to a free and fair election.

The Court is not satisfied, therefore, with the rationality of the double standard applied by the Secretary.

To treat the candidates as equally dividing the votes "as if the election had never taken place in that local" would seem to be more logical as a remedy where the violation in fact consisted of complete failure to hold the election than where the violation

consisted of failure to provide secrecy or safeguards making it impossible for persons other than the voter to know how he voted.

The mere fact that the number of voters who failed to vote can be readily counted when no election was held is no rational justification for using the total electorate in that case, but only the margin of victory where the important right of secrecy has been infringed.

In our judgment the Secretary should undertake a "recount," applying "equal protection" principles, and using the same standard of total rejection instead of margin in instances where he finds that violations have occurred of a character which infringe the right of secrecy by enabling other persons to ascertain (either at the time of voting or subsequently) how a voter votes. Technical violations, not capable of influencing the voter's choice, or not interfering with an honest count and tabulation, may be disregarded; but lack of secrecy can not be countenanced in the light of the clear intent expressed by Congress.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WALTER BACHOWSKI
Plaintiff,

v.

PETER BRENNAN, [now JOHN T. DUNLOP], Secretary of Labor

and

UNITED STEEL WORKERS OF AMERICA
Defendants.

Civil Action No. 73–0954

### JUDGMENT

AND NOW, this 7 day of May, 1976, for the reasons set forth in the foregoing opinion,

IT IS ORDERED, ADJUDGED, DECREED, AND FINALLY DETERMINED, that the statement of the Secretary of Labor (as supplemented by his Supplemental Statement), without more, evinces that his decision is so irrational as to be arbitrary and capricious; and the cause is remanded to the Secretary for appropriate further proceedings.

/s/
United States District Judge

Copies to: